SYLVANIA ELECTRIC PRODUCTS INC. *vs.* CITY OF NEWTON
& others.

Middlesex.    January 5, 1962. — May 31, 1962.

Present: WILLIAMS, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Reclassification, Spot zoning, "Contract" zoning, Private restrictions, Amendment of by-law or ordinance.

Facts stated in a decision by a judge of the Land Court disclosed no spot zoning or violation of the uniform classification requirement in an amendment of the zoning ordinance of a city changing from residential to limited manufacturing the classification of a large undeveloped tract bounded on two sides by a strip of land of the metropolitan district commission along a river and located diagonally across the river from an industrial center. [429–430]

An unconditional amendment of a city's zoning ordinance changing the classification of a large tract of land from residential to limited manufacturing was not invalid by reason of the facts that a prospective developer of the tract seeking the amendment, after consultation with city officials concerned with zoning, voluntarily agreed to impose on the tract certain construction and use restrictions in addition to the regulations established by the zoning ordinance for a limited manufacturing district but consistent therewith and beneficial to the city, that the proposed amendment of the ordinance induced the developer's imposition of the restrictions, and that the imposition thereof induced the enactment of the amendment as applicable to the tract subjected thereto. [430–437] KIRK, J., dissenting.

The fact that certain restrictions, voluntarily imposed on a tract of land by its owner as an inducement of an amendment of the local zoning ordinance reclassifying the tract, were agreed to and imposed after the statutory public hearings on the proposed amendment did not invalidate the enactment of the amendment without further hearing. [435]

PETITION filed in the Land Court on July 14, 1960.

The case was heard by *Fenton,* J.

*Carlton W. Spencer* (*Frank G. Allen, Jr. & Henry W. Keyes* with him) for the respondent landowners.

*Roger Allan Moore* (*W. Lincoln Boyden* with him) for the petitioner.

*Matt B. Jones,* City Solicitor, for the City of Newton, concurred in the brief submitted in behalf of the petitioner.

WHITTEMORE, J.  This appeal under G. L. c. 231, § 96, and c. 185, § 15, by landowners in Newton, challenges the decision of the Land Court which held valid an amendment to the Newton zoning ordinance enacted on June 27, 1960. The amendment changed from a single residence A district to a limited manufacturing district the classification of 153.6 acres of land now of the petitioner (Sylvania) situated on the southerly side of Nahanton Street in the southerly end of the city and bounded on the west and south by a strip of land of the metropolitan district commission along the Charles River.  The locus is diagonally across the river from the development of the New England Industrial Center in Needham which lies between Route 128 and the river. The limited manufacturing district classification had been added to the ordinance on September 21, 1959.  One other parcel had been placed in the classification prior to the amendment.

The judge viewed the locus and its environs.  His decision states facts in apparently full detail and incorporates all the exhibits.

1.  The validity of the ordinance in all aspects, other than that discussed in point 2 below, is shown by the facts stated in the decision.  It was not spot zoning; it did not violate the requirement of uniform classification; it was not invalidated because made after other nearby land had been for a long time classified for residences.  *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589.  *Cohen* v. *Lynn,* 333 Mass. 699, 704–705, and cases cited.  *Elmer* v. *Board of Zoning Adjustment of Boston,* 343 Mass. 24, 34–35, and cases cited.  It was an appropriate zoning reclassification of the locus in the light of the physical characteristics of the land and very substantial changes in the use of land in the vicinity.  *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 413.  We do not reach the issue whether the judge's conclusion in respect of these points must be taken in any event because of his consideration of other facts not stated.  See *Harrington* v. *Anderson,* 316 Mass. 187, 192; *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 449; *Ide* v.

*Bowden,* 342 Mass. 22. The appellants do not contend that the amendment was invalid because fewer acres were reclassified than were described in the proposal of which statutory notice was given. See *Burlington* v. *Dunn,* 318 Mass. 216, 218–219; *Doliner* v. *Town Clerk of Millis,* 343 Mass. 10, 12–13.

2. The principal issue is the effect of Sylvania's imposition of restrictions on the locus in connection with the enactment of the amending ordinance and of steps taken by the planning board, and others acting for the city, to cause Sylvania so to do.

In respect of this issue the judge found these facts: Sylvania on April 14, 1960, having an option to purchase a parcel containing 180 acres, inclusive of the rezoned locus, petitioned the board of aldermen (aldermen) to reclassify the parcel. On May 11, 1960, the planning board, after a public hearing held jointly with the aldermen's committee on claims and rules, reported that it had asked the city's planning consultant to review the petition and had decided to withhold action until he should report. On June 2, 1960, the board reported to the aldermen its vote to approve Sylvania's petition except that it recommended retaining in the residence A district a substantial frontage on Nahanton Street, including a parcel of about eighteen and one-half acres on the east side of the parcel adjacent to the property of the Charles River Country Club.

"Meanwhile, Sylvania, in consultation with the planning consultant . . . and members of the planning board and the claims and rules committee . . ., had agreed to certain restrictions upon its use of . . . [the locus],"[1] and had

---

[1] The minutes of the planning board meeting of May 25, 1960, after recording the approval of the petition with the exception noted in the opinion above, state as follows: "The Planning Board also voted to send the following letter to the chairman of the Claims and Rules Committee: 'At a meeting of the Planning Board held May 25, 1960, petition . . . of . . . Sylvania . . . was discussed in great detail and a modified but favorable decision was reached. This decision and a report on the petition are officially submitted in a separate communication to the Board of Aldermen. In considering the change of zone requested by the above petition, the Planning Board respectfully suggests that the following conditions be obtained by agreement with the proper parties concerned, if the Board of Aldermen is favorably disposed to the zone request. . . . [Items 1 to 6, specifying restrictions similar to but not identical with those agreed to and eventually imposed (see text of opinion)].' "

agreed to cede three acres, comprising the southeasterly tip of the parcel, to "Oak Hill Park Association" to be retained in the residence district. The restrictions, to be operative for thirty years from September 1, 1960, were set out in a draft of a deed attached to a proposed option agreement whereby Sylvania would give the city an option to purchase, within a thirty year period, for $300, a strip of land on the west and southwesterly side (the river side) of the parcel, adjacent to the land of the metropolitan district commission, containing thirty and one-half acres. By the option agreement Sylvania would agree to abide by the restrictions in the draft deed during the option term pending the city's exercise thereof. The intention would be to give the city a dominant estate capable of enforcing the restrictions. The deed was to convey the thirty and one-half acres subject to the restriction for the benefit of Sylvania's adjoining premises that for a period of fifty years no buildings or structures (other than fences) should be erected or maintained on the granted premises.

The proposed restrictions limited the floor area of all buildings to be constructed on the premises to 800,000 square feet; required that sixty per cent of the ground area, or seventy-three and nine-tenths acres, be maintained in open space not occupied by buildings, parking areas or roadways; set back the building line from forty to eighty feet; imposed a sliding scale of height restrictions; called for a buffer zone of comparable size to the three acres to be ceded to Oak Hill Park Association and adjacent thereto, on which no structures might be erected; restricted the number and type of signs and the type of lighting; limited the use of buildings to certain, but not all, of the uses permitted in a limited manufacturing district; and established a pattern for traffic in connection with construction on the premises.

On June 27, 1960, the aldermen's committee on claims and rules reported its approval of the petition as modified by the planning board in its formal vote of approval, except that the committee recommended that the strip on Nahanton Street reserved for the residence district be increased

in depth from 140 to 180 feet.  There was submitted to the June 27 meeting a memorandum by the planning consultant, addressed to the mayor and to the alderman who was chairman of the committee on claims and rules.  This memorandum summarized "the acreage breakdown on the Sylvania site, based upon the tentative deed restrictions as of June 23, 1960," and included a sketch map of the site delineating the areas and restrictions.

Thereafter, at the June 27 meeting, the aldermen enacted the ordinance which approved Sylvania's petition as modified in accordance with its committee's recommendation "and in connection therewith passed [the] order . . . authorizing the mayor to accept the proposed option agreement."

Sylvania took title to the Nahanton Street parcel on July 6, 1960, and thereafter on that day executed the option agreement with attached form of deed.  Certified copies of the ordinance of June 27, 1960, which amended the zoning ordinance and of the order which authorized the mayor to accept the option bear the indorsement "Executive Department Approved July 7, 1960."  The deed form and option agreement were recorded on July 8, 1960.

In several other jurisdictions votes to rezone on the express condition that the owner impose restrictions (sometimes called "contract zoning") have been held invalid. *Hartnett* v. *Austin,* 93 So. 2d 86 (Fla.).  *Baylis* v. *Mayor & City Council of Baltimore,* 219 Md. 164.  *Rose* v. *Paape,* 221 Md. 369.  *Carole Highlands Citizens Assn. Inc.* v. *Board of County Commrs. of Prince George's County,* 222 Md. 44. *V. F. Zahodiakin Engr. Corp.* v. *Zoning Bd. of Adjustment of Summit,* 8 N. J. 386.  See *Houston Petroleum Co.* v. *Automotive Prod. Credit Assn.* 9 N. J. 122.

Rathkopf, The Law of Zoning and Planning (3d ed.) p. 74–9, states that "The basis of such rule is that the rezoning of a particular parcel of land upon conditions not imposed by the zoning ordinance generally in the particular district into which the land has been rezoned is prima facie evidence of 'spot zoning' in its most maleficent aspect, is

not in accordance with a comprehensive plan and is beyond the power of the municipality."

The only decision squarely to the contrary which has come to our attention is *Church* v. *Islip,* 8 N. Y. 2d 254, 259, which the judge in the Land Court found persuasive. The change of zone, sustained in a majority opinion by Desmond, C.J., had been voted on condition that the owners agree that the building should not occupy more than twenty-five per cent of the area, that a six foot fence be erected five feet within the boundary line, and that shrubbery be planted and maintained at fence height. The court said: "Since the Town Board could have, presumably, zoned this . . . corner for business without any restrictions, we fail to see how reasonable conditions invalidate the legislation. . . . All legislation 'by contract' is invalid in the sense that a Legislature cannot bargain away or sell its powers. But we deal here with actualities, not phrases. To meet increasing needs of Suffolk County's own population explosion, and at the same time to make as gradual and as little of an annoyance as possible the change from residence to business on the main highways, the Town Board imposes conditions. There is nothing unconstitutional about it." See *Pecora* v. *Zoning Commn. of Trumbull,* 145 Conn. 435, 441; *Pressman* v. *Mayor & City Council of Baltimore,* 222 Md. 330, 344–345.

We turn to an analysis of what was done in Newton and note that although no condition was imposed by the aldermen in their vote, the conclusion is inescapable that the option proposal was a significant inducement of the zoning amendment and the amendment induced the giving of the option.[1]

It is said that there was a purported, invalid exercise of the zoning power, for the vote operated to subject the locus

---

[1] By St. 1903, c. 152, and G. L. c. 43, § 55, the mayor had ten days after June 27 to disapprove and return the ordinance with "his written objections" and if "notwithstanding such disapproval" the ordinance were again to be passed a two-thirds vote of all members would have been required. As noted, the option was executed on July 6, the executive department approval was on July 7, and the option was recorded on July 8.

not only to the restrictions of a limited manufacturing district but also to the restrictions of the option and deed form. But that is not, precisely, what happened. The induced, voluntary action of Sylvania, not the vote of the council, imposed the option restrictions; the vote reclassified land which was being subjected to those restrictions. The zoning decision was that the locus, so restricted by its owner, should be made a limited manufacturing district. That, in form, was an appropriate and untainted exercise of the zoning power.

What was done involved no action contrary to the best interest of the city and hence offensive to general public policy. It involved no extraneous consideration (as, for example, a request to give land for a park elsewhere in the city) which could impeach the enacting vote as a decision solely in respect of rezoning the locus.

We discern no aspect of spot zoning, lack of uniformity, or failure to conform to the comprehensive zoning plan. Even if the restrictions had been made a part of the zoning ordinance, they would not have created spot zoning. The site was all the land in the neighborhood which was proposed for reclassification. The private restrictions in no way made the locus less appropriate for classification as a limited manufacturing district. It is inconsequential that other areas elsewhere in the city, in, or to be put in, such a zoning district, would not have those restrictions. Requirements of uniformity and conformity to a plan do not mean that there must be identity of every relevant aspect in areas given the same zoning classification.

It does not infringe zoning principles that, in connection with a zoning amendment, land use is regulated otherwise than by the amendment. Zoning regulations, as Sylvania points out, exist unaffected by, and do not affect, deed restrictions. *Vorenberg* v. *Bunnell,* 257 Mass. 399. *Snow* v. *Van Dam,* 291 Mass. 477. The owner of the locus could have imposed restrictions on it prior to the original filing of the petition for rezoning without effect upon the subsequent rezoning vote.

Since the private regulation was, beyond dispute, harmonious, consistent, and beneficial, no hurtful effect requires that we look behind the form of what was done.

It is pointed out that proposals for zoning change can be adopted only after notice and a hearing. G. L. c. 40A, § 6. But the option restrictions did not make the locus a different subject for rezoning from what it was when the notice was given and the hearing held. The voluntary limitations imposed on the use of the land, although relevant in considering the proposal to rezone it, did not call for a new notice and hearing. They could have no adverse effect on anyone other than Sylvania. As noted, none of these restrictions was inconsistent with the requirements for the zoning district. It is far fetched to suggest that citizens opposed to any change might have stayed away from the original hearing in expectation that the proposal would be disapproved. The imposition of these restrictions, subsequent to the hearing, is no more significant than are changes in the zoning proposal itself which are within the scope of the original proposal. Such changes do not require further notice. *Burlington* v. *Dunn,* 318 Mass. 216, 218–219. *Doliner* v. *Town Clerk of Millis,* 343 Mass. 10, 12–13.

It is objected that the council has not determined that the locus, unrestricted, is appropriate to be put in the limited manufacturing district. We agree that the zoning decision applied to the locus as affected by the option agreement. It was not, however, conditioned upon the validity of the option restrictions. The council made an appropriate zoning decision when it determined that the locus, subject to whatever limitations on its use the option effectively placed thereon, be put in the limited manufacturing district. Although not directly in issue, it may be noted that the restrictions appear to have been validly imposed by a sealed and recorded instrument. Sylvania is bound for thirty years even if the option is not exercised. Nothing now turns on an issue of the power of the mayor and council to pay for the dominant estate and take a deed.

The appellants urge that citizens should be able to look with confidence only to the zoning law to ascertain what are

the zoning restrictions. The answer is that the option restrictions are not zoning restrictions, and all who have any interest in restrictions in the chain of title may find them of record.

The final objection is that even though the officials acted with good intent, beneficially to the city, and consistently with zoning principles, they were nevertheless making an unauthorized use of the zoning power. Unquestionably the officials let it be known that favorable rezoning depended in great likelihood on the adoption of the option restrictions. The planning board acted as a board when it suggested that "the following conditions be obtained by agreement with the proper parties concerned"; the planning consultant was acting as an adviser in respect of zoning when he submitted to the aldermen and the mayor the memorandum which summarized the proposed restrictions; and the aldermen confirmed their participation as a board by the vote which authorized the mayor to accept the proposed option agreement. This was all extrastatutory but nevertheless, proper activity, precedent to the exercise of the zoning power, not the exercise thereof. Whether the city may have the benefit of the pressures of its officials on Sylvania without adoption of the restrictions into the zoning proposal turns on the effect of the restrictions thereon. Since, as stated, the zoning proposal was not essentially changed, it was not necessary to reinitiate the amending process.

The locus was a unique site which was about to go into a specialized use.[1] It was appropriate and lawful to ask the prospective owner to take consistent action to ameliorate the effect of the pending drastic change of zoning classification.

It is, as other courts have noticed, anomalous for owners of nearby land who object to any change away from the residence district to object on the ground that, contemporaneously, ameliorating restrictions have been imposed. But,

---

[1] Among the exhibits is "A Report on the Sylvania Science Center prepared by the Industrial Development Committee of the Newton Chamber of Commerce."

since they would be aggrieved by the purported change if it were illegal, we have considered the issue on its merits.

3.   It is not necessary to consider Sylvania's appeal from the denial in the Land Court of its motion to dismiss the respondent landowners' appeal.

*Decision affirmed.*

· KIRK, J.   I do not agree.   The mutual advantages gained by Newton and Sylvania by their arrangement are not in issue.   The motives of the participants are not questioned. The central thesis of this dissent is that the method used by Newton to impose restrictions on the use of land owned by Sylvania is invalid.   It is, in my opinion, invalid because:  (1) the regulation and restriction of land used for "the purpose of promoting the health, safety, convenience, morals or welfare" of a city's inhabitants (G. L. c. 40A, § 2) is an exercise of the police power, (2) which reposes in the Legislature, (3) which has exercised this power in G. L. c. 40A, by (4) delegating it to cities and towns within limits and procedures, (5) which Newton has not followed.

As Ronan, J., said in *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128, 131, "The General Court was empowered by art. 60 of the Amendments to the Constitution of this Commonwealth 'to limit buildings according to their use or construction to specified districts of cities and towns.' The Legislature could itself exercise this power . . . or it could delegate the power to create such local districts to the legislative branch of a city government and to the voters of a town.   *Spector* v. *Building Inspector of Milton,* 250 Mass. 63.   But the Legislature could determine the extent of the power granted to these municipalities and prescribe the terms and conditions under which it could be exercised, and *action taken beyond the authority conferred or not in compliance with the terms and conditions governing its exercise would be invalid,*" citing cases (emphasis supplied).

Again, Wilkins, C.J., in *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 255–256, states, "The respondents seem to make the astonishing contention that the town's vote in

enacting the by-law is a judicially unreviewable act. The argument, if made, overlooks the elementary principle that a town [or city] is merely a subordinate agency of State government created for convenient administration and has only those powers which are expressly conferred by statute or necessarily implied from those expressly conferred or from undoubted municipal rights or privileges . . . [citing cases]. Examples where an ordinance or by-law has been held invalid because enacted in excess of the authority conferred by the enabling act are numerous . . . [citing cases]."[1]

We deal, then, with a case of *delegated legislative power*. The delegation is contained in The Zoning Enabling Act. G. L. c. 40A.

General Laws c. 40A, § 2, provides in part, "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants, any city, except Boston, and any town, may *by a zoning ordinance or by-law* regulate and restrict the height, number of stories, and size of buildings and structures, the size and width of lots, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, agriculture, residence or other purposes . . . .

"For any or all of such purposes a *zoning ordinance or by-law* may divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this chapter, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, and structures, or use of land . . ." (emphasis supplied).

There would seem to be no question (and it appears the majority agrees) that (1) each and every restriction im-

---

[1] A similar insistence upon strict compliance with the limitations on powers granted by c. 40A has always attended our review of the granting by a board of appeals of a variance from a validly enacted ordinance. G. L. c. 40A, § 15. *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, 450. *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, 454. *Barnhart* v. *Board of Appeals of Scituate*, 343 Mass. 455, 457.

posed by the "option agreement" (contract)[2] is one which the city is empowered to impose by ordinance under c. 40A, § 2;[3] and (2) each and every restriction imposed by the contract was imposed in order to further the purposes stated in c. 40A, § 2 and § 3.[4]

With equal certainty it should be clear that when a municipality elects to impose restrictions on the use of land for the purposes set out in c. 40A, §§ 2, 3, it must, under the express provisions of c. 40A, § 2, impose them *"by a zoning ordinance or by-law."* The attempt to impose them by contract is "beyond the authority conferred . . . [and] not in compliance with the terms and conditions governing its exercise" and therefore is invalid.

Moreover, c. 40A, § 6 (see also § 7), prescribes explicitly the procedural steps which must be taken prior to the adoption, amendment or repeal of ordinances or by-laws relating to land restrictions. Included among the steps is the requirement of public hearings before both the planning board and the city council after notice thereof has been given to the city's inhabitants so that "all interested persons shall be given an opportunity to be heard."[5] There is no similar requirement for notice or hearing when restrictions are to be imposed by a city on a parcel of land, how-

---

[2] As the situation stands there are no deed restrictions on Sylvania's land. The restrictions derive from the collateral promises of Sylvania in the option agreement to abide by the "restrictions" in the undelivered deed attached to the option agreement. In this respect it should be noted that the duration of Newton's power to exercise the option is coterminous with the contract restrictions. It seems clear that this arrangement was made so that Newton, when (and only when) it felt it was necessary, could acquire a dominant estate for the specific enforcement of the restrictions. Until such a contingency occurs, which apparently is regarded as unlikely by both Sylvania and Newton, the restrictions exist only by virtue of the collateral promises.

[3] See paragraph 7 of the majority opinion.

[4] General Laws c. 40A, § 3, provides: "Zoning regulations and restrictions shall be designed among other purposes to lessen congestion in the streets; to conserve health; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements; to conserve the value of land and buildings; to encourage the most appropriate use of land throughout the city or town; and to preserve and increase its amenities."

[5] See changes made in these provisions by St. 1962, c. 201, § 1.

ever large, by contract. What we have, then, is not only an invalid method for imposing restrictions but an invalid method which admits the added evil of circumvention of the declared legislative requirement that interested parties be fully informed of the particulars of proposed municipal land restriction and be given an opportunity to be heard on these particulars.

The majority, however, states that the restrictions here imposed are not "zoning restrictions" and equates them with contract restrictions negotiated by private landowners for the benefit of adjoining land. I submit that this characterization will not withstand analysis. In the first place, the benefit of these contract restrictions does not run to or with any land now owned by Newton. Secondly, and more significantly, these restrictions were negotiated and agreed to by Newton and Sylvania in conjunction with, and as an integral part of, the enactment of the amendment to the Newton zoning ordinance. The amendment subjected the land to restrictions uniformly imposed on limited manufacturing districts; the contract subjected the land to additional restrictions in order, as the opinion recognizes, "to ameliorate the effect of the pending drastic change of zoning classification."

To my mind, the conclusion seems inescapable that, in truth and substance, the action of Newton was not the mere rezoning of a parcel of land which was already subject to privately negotiated contract restrictions but was, rather, one double-barrelled attempt to exercise the zoning power delegated to it by the Legislature under c. 40A, § 2. If the phrases "zoning restrictions" and "exercise of the zoning power" have any meaning, they must include the restrictions here imposed by contract. To say, as the majority in effect says, that they are not "zoning restrictions" or do not constitute "an exercise of the zoning power" because the city imposes them by contract and not by ordinance seems to me to be a play on words and to beg the question. The purpose and effect of their imposition is the same whether they are accomplished by ordinance or contract. It is the method of imposition which is the critical issue.

Whatever the action of Newton may or may not be called, it (1) in fact results in the imposition of restrictions by a city (Newton is the party that can and would enforce these restrictions) (2) for the purposes set out in c. 40A, §§ 2, 3, (3) upon the use of land by the owner (4) by the contract method (5) which method is prohibited by the Legislature (6) which alone can prescribe the method, and (7) hence is illegal.

Although the burden of the foregoing discussion is the invalidity of the contract restrictions, it is my opinion that the amendment to the zoning ordinance is itself also invalid. Newton's use of two methods in close and complementary coördination to accomplish a single purpose, namely the regulation of use of Sylvania's land is, in fact and in substance, a single act. All indications are that, unless Newton had first obtained the additional contract restrictions, it would not have effected the "drastic change of zoning classification" by enacting the amendment. As the opinion states, the amendment and the contract were mutually induced.

The elimination of the invalid contract restrictions, here used in combination with the ordinance restrictions resulting from the amendment to accomplish a single purpose, defeats the single purpose. It also reveals the essential oneness or interdependence of the methods used. Thus viewed as one, it would seem inevitably to follow that such ordinance restrictions fall with the contract restrictions as being in excess of the power conferred in c. 40A, § 2.[6]

I would require compliance with the statute, and accordingly would reverse the decision.

---

[6] Whether Newton could accomplish by a lawful exercise of its delegated power completely and precisely what it has attempted to accomplish by an unlawful exercise of power is, in my mind, an open question.