[No. 2140-1.   Division One.   August 19, 1974.]

JAMES G. TALBOT et al., *Appellants*, v. GORDON M. GRAY
et al., *Respondents*.

*Graham, McCord, Dunn, Moen, Johnston & Rosenquist, James D. Rolfe, Frederick O. Frederickson,* and *R. Bruce Johnston,* for appellants.

*Cartano, Botzer & Chapman, Jon G. Schneidler, John P. Harris, Corporation Counsel,* and *Gordon F. Crandall, Assistant,* for respondents.

WILLIAMS, J.—This action was brought by James G. Talbot and Joyce M. Talbot, his wife, and Charles R. Hartman and Helen Hartman, his wife, to permanently enjoin the City of Seattle from authorizing, and Gordon M. Gray and Heli J. Gray, his wife, from constructing a dock on 5 feet of shoreland of Lake Washington in Seattle. Both sides moved for summary judgment. The trial court denied permanent injunctive relief and awarded the Grays damages for a temporary injunction which had been preliminarily issued at the instance of the Talbots and Hartmans. This appeal followed.

The facts are briefly these: The Talbots and the Hartmans own the residential lakeshore property as depicted in the diagram. The Grays applied for and were granted a permit by the City of Seattle to construct a dock at the end of the 5-foot corridor shown on the diagram. The basic question is whether the City correctly applied the provisions of its zoning ordinance in granting the permit. We hold that the City did.

The general purpose and scope of the City's zoning ordinance is "to protect and promote public health, safety, morals, and general welfare through a well-considered comprehensive plan for the *use* of land." Seattle code 26.02.020. The ordinance "limits the *use* of land and limits the height, size, *use* and location of *buildings* and *structures* . . ."

Parcel 3 includes the strip of land between points A and C, the dimensions of which are approximately 290 feet by 5 feet wide.

26.02.020. Any use of land within a zone not permitted by the ordinance is prohibited. 26.12.110.

In addition to permitted principal use for a lot, there may be a use or structure incidental thereto called an accessory use or structure, if located on the same lot. 26.06.220. Some accessory uses are permitted outright. Among them are: "(k) Moorages for private pleasure craft . . ." 26.12.040. The proposed dock in question is, therefore, permitted as an accessory use if it is on the same lot as the Grays' house, which is the principal use. A lot is defined as:

> A platted or unplatted parcel of land unoccupied, occupied or to be occupied by a *Principal Use* or *Building and Accessory Buildings,* together with such *yards* and *open spaces* as are required by this Title . . .

26.06.130. The lot lines are "[t]he property lines bounding a *Lot.*" 26.06.130.

The principal contention of the Talbots and Hartmans is that the rear lot line in an irregularly shaped lot, which the Grays' is, is "a *Line* ten (10) feet in length within the *Lot,* parallel to and at the maximum distance from the *Front Lot Line.*" 26.06.130. Therefore, they say, because the corridor extending from the Grays' main property to the lake is only 5 feet in width, the rear lot line cuts off the corridor at the "C" on the diagram, and the corridor is beyond that. Ergo, the dock was constructed outside of the rear lot line and therefore, outside of the area of the lot. The description of a rear lot line, upon which the contention is based, is contained in chapter 26.06 entitled "Definitions."

▮ The reason for defining a rear lot line is to assist in describing a rear yard. A rear yard is

> An *open space* between the *side lot lines* of a *lot,* extending from the *rear lot line* to a line on the *lot* parallel to the *rear lot line,* to a depth measured horizontally, as specified in this title.

Seattle code 26.06.260. The purpose of defining a rear yard is to establish bulk regulations for the lot, 26.24.020, and rear yard requirements for special conditions, 26.44.120 under Bulk Regulation Modifications, chapter 26.44. Neither

one of these purposes has anything to do with the use of the land which is bounded within the property lines; each has to do only with the minimum requirements for width and depth. The corridor is still a part of the Grays' lot, even though outside of the rear yard, because it is within the property lines bounding the lot. The dock is an accessory use or structure on the lot, and is permitted outright.

■ It is contended that the Grays did not give the notice required by the state Shoreline Management Act of 1971, as implemented by Seattle ordinance No. 100423 (Seattle code 20.60). It appears that notice was given as required by the state act, but not as required by the implementing ordinance. From June 1, 1971, the effective date of the Shoreline Management Act, until December 11, 1971, the effective date of Seattle ordinance No. 100423, the City of Seattle issued permits for substantial development pursuant to the policy in RCW 90.58.020, and to the department of ecology guidelines. Following December 11, the City issued permits pursuant to Seattle ordinance No. 100423. Grays' obligations and rights to develop vested on November 18, 1971, when they applied for a substantial development permit. The applicable rule adopted by the court in *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958) and recently approved in *Eastlake Community Council v. Roanoke Assoc., Inc.,* 82 Wn.2d 475, 481, 513 P.2d 36 (1973) is

> [T]he right vests when the party . . . applies for his building permit, if that permit is thereafter issued. This rule, of course, assumes ·that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit.

Since the Grays applied for their substantial development permit, the state legislature has exempted docks such as theirs from being subject to the Shoreline Management Act of 1971. RCW 90.58.030(3) (e) (vii) provides:

> that the following shall not be considered substantial developments for the purpose of this chapter:
> . . .

(vii) Construction of a dock, designed for pleasure craft only, for the private noncommercial use of the owner, . . . of a single family residence, the cost of which does not exceed two thousand five hundred dollars.

The Grays listed the cost of the dock at $2,500 on their application.

The Talbots and Hartmans assert that the construction of the dock at the end of the narrow corridor violates public policy. It appears that the property lines of parcel No. 1 were drawn so as to afford the Talbots access to West Laurelhurst Drive, and the property lines to parcel No. 3 were drawn to afford the Grays access to the lake. If this configuration of the lots is legal, and no one has said that it is not, then the logical use of each parcel, as permitted by the zoning ordinance, is also legal.

It is finally contended that the court erred in awarding the Grays judgment for $3,417.50, which was their cost for legal services in defending against the imposition of first a temporary and then a permanent injunction. Injunctive relief preventing the construction of the dock was the whole point of the Talbots' and Hartmans' action. Damages which consisted of the cost of defeating that action were properly awarded. *Cecil v. Dominy*, 69 Wn.2d 289, 418 P.2d 233 (1966).

The judgment is affirmed.

FARRIS and HOROWITZ, JJ., concur.

Petition for rehearing denied November 6, 1974.

Review denied by Supreme Court January 22, 1975.