[No. 48040-1. En Banc. July 29, 1982.]

NORCO CONSTRUCTION, INC., *Respondent*, v. KING COUNTY, ET AL, *Petitioners*.

*Norm Maleng, Prosecuting Attorney,* and *Susan R. Agid, Deputy,* for petitioners.

*Inslee, Best, Chapin, Uhlman & Doezie, P.S.,* by *Richard U. Chapin,* for respondent.

[As amended by order of the Supreme Court September 3, 1982.]

UTTER, J.—Norco Construction, Inc., filed a preliminary plat application for subdivision which conformed to the then existing King County Comprehensive Plan and all applicable laws and policies in effect in the County. It conflicted only with a proposed comprehensive plan. Action on the plat was postponed indefinitely by the County and after the passage of a substantial time during which no definitive action was taken by the County, Norco filed a writ of mandamus to compel the County to act. The trial court granted

the writ and directed the County to consider the application on its next agenda on the basis of the zoning procedures and ordinances existing at the time the preliminary plat application was completed. It also prohibited the County from considering or using the proposed plan in determining whether to concur in the report and recommendation of the hearing examiner on the plat.

On appeal, the Court of Appeals in *Norco Constr., Inc. v. King Cy.*, 29 Wn. App. 179, 627 P.2d 988 (1981) affirmed the action of the trial court, holding the County had no right to defer decision on the preliminary plat application beyond the time limit of 90 days from the day the application was filed pursuant to RCW 58.17.140. It further held that upon expiration of that time limit Norco acquired a "vested right" to a decision "on the basis of the zoning ordinances, comprehensive plan and rules of procedure in effect on January 8, 1979 when the preliminary plat application was completed." 29 Wn. App. at 192.

We conclude the Court of Appeals correctly held the Council may not defer beyond the statutory time period approval or disapproval of a preliminary plat because it is not in conformity with proposed changes to the County's comprehensive plan and zoning ordinances. We also hold such proposed changes are not a valid basis for disapproval of a plat application within the time period required by statute. Finally, we agree, without discussion, that mandamus is proper to order the Council to act on the preliminary plat of a proposed subdivision.

In 1975, a citizens' committee was created to formulate a Soos Creek Plateau Communities Plan (Soos Creek Plan) to be adopted as an amendment to the County's comprehensive plan. The committee met during the following 2 years. In May 1977, respondent Norco submitted its Star View Acres plat application with a density of 1 unit per acre. The following month, in June 1977, the citizens' committee submitted a draft Soos Creek Plan to the Council contemplating density of 1 unit per 5 acres in the vicinity of the proposed Star View Acres. The applicant's plat is for

75 acres in the Soos Creek Plateau area, a 73–square–mile area located east of the cities of Renton, Kent and Auburn, and above the Green River Valley in southwest King County.

In August 1977, a county hearing examiner recommended approval of the Star View Acres preliminary plat application while identifying its inconsistency with the prospective Soos Creek Plan. The examiner's recommendation was then forwarded to the King County Council. On October 31, 1977, the plat application was placed on the Council agenda and referred to the planning and community development committee considering the pending Soos Creek Plan. On November 11, 1977, the hearing examiner notified respondent Norco that health department approval of sewage and water systems was required prior to preliminary plat approval. RCW 58.17.150(1); King County Code 19.28-.050(c).

On January 30, 1978, the Council passed ordinance 3579 (King County Code 19.08.250) providing for approval of preliminary plats if the water system is "adequate" but providing for deferral of approval when a hearing examiner has identified the plan as inconsistent with the community plan adopted by "the applicable citizens community plan committee and referred to the County for adoption". On December 11, 1978, respondent received health department approval of his water and sewage facilities.

The County did not act further, and after completing its application on January 8, 1979, Norco filed a petition for writ of mandamus in Superior Court in February 1979. In April 1979, the trial court issued its writ of mandamus. In November 1979, the citizens' committee Soos Creek Plan was adopted by the Council with maximum density for Star View Acres of 1 unit per 5 acres.

The principal complaint of the County is directed to that portion of the Court of Appeals opinion which states:

> When the statutory time within which the legislative body of a political subdivision of the State must act on a preliminary plat has expired without the required action

being taken, the applicant then acquires certain vested rights in connection with the plat application. 29 Wn. App. at 188. Washington does adhere to the minority rule that a landowner obtains a vested right to develop land when he or she makes a timely and complete building permit application that complies with the applicable zoning and building ordinances in effect on the date of the application. *Hull v. Hunt*, 53 Wn.2d 125, 331 P.2d 856 (1958); *State ex rel. Ogden v. Bellevue*, 45 Wn.2d 492, 275 P.2d 899 (1954). *See* Comment, *Washington's Zoning Vested Rights Doctrine*, 57 Wash. L. Rev. 139 (1981). Our vested rights rule also has been applied to building permits, *Ogden, supra; Hull, supra;* conditional use permits, *Beach v. Board of Adj.*, 73 Wn.2d 343, 438 P.2d 617 (1968); a grading permit, *Juanita Bay Vly. Comm'ty Ass'n v. Kirkland*, 9 Wn. App. 59, 510 P.2d 1140 (1973); and a substantial development permit, *Talbot v. Gray*, 11 Wn. App. 807, 525 P.2d 801 (1974).

The County argues a vesting rule is inappropriate in this context. We agree with the County that the terminology "vested right" is inappropriate. Nonetheless, we hold Norco did have a right to have a decision on its preliminary plat application made within 90 days after filing its application and based on the factors relevant during that period.

I

The County urges this vesting rule should not be applied to plat applications inasmuch as Council decisions are discretionary. The distinction between ministerial and discretionary acts is not relevant to the validity of procedural limits placed on the decisionmaking entity. The need for a "date certain" upon which a right vests is to avoid tactical maneuvering between parties and that need would appear equally strong whether the act is discretionary or ministerial. *Hull v. Hunt, supra* at 130.

◼ The basic rule in land use law is still that, absent more, an individual should be able to utilize his own land as he sees fit. U.S. Const. amends. 5, 14. Although zoning is,

in general, a proper exercise of police power which can permissibly limit an individual's property rights, it goes without saying that the use of police power cannot be unreasonable. *State ex rel. Randall v. Snohomish Cy.*, 79 Wn.2d 619, 488 P.2d 511 (1971); *In re Girsh*, 437 Pa. 237, 263 A.2d 395 (1970). While local governments exist to provide necessary public services to those living within their borders and to avoid harms in their protection of the public's health, safety, and general welfare, exercise of this authority must be reasonable and rationally related to a legitimate purpose of government such as avoiding harm or protecting health, safety and general, not local or parochially conceived, welfare. *Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 576 P.2d 401 (1978); *Randall, supra; Farrell v. Seattle*, 75 Wn.2d 540, 452 P.2d 965 (1969); *Southern Burlington Cy. NAACP v. Mount Laurel*, 67 N.J. 151, 177–78, 336 A.2d 713, *cert. denied*, 423 U.S. 808, 46 L. Ed. 2d 28, 96 S. Ct. 18 (1975).

Not only are local governments limited by due process protections in how they zone communities, they are similarly limited in the decisions they make under the adopted zoning plan. Unreasonable delay in approving plat applications may be just as much an exclusionary device as an unconstitutional exclusionary zoning plan itself. As one commentator has stated:

At some point, however, the clear inference arises that delay is being used as a device to exclude. Such an inference is irresistible in circumstances where planning board or other approving agency meetings are infrequent, canceled, or simply not scheduled; where relatively minor defects in developer submissions give rise to a tabling of the proposal; where requests for additional data, new information, or the input of state or local agencies are made at each stage of the review process or strung out interminably; where the criteria of judgment continually shift; or where local officials suggest, often informally, that project approval might be more readily forthcoming if the developer voluntarily made concessions not technically required by law.

Delogu, *The Misuse of Land Use Control Powers Must End: Suggestions for Legislative and Judicial Responses,* 32 Me. L. Rev. 29, 51–52 (1980). As an example of misuse of land use control powers, the line between the permissible scope of what has been called "contract zoning" and over-reaching by local officials to extract extra–legal concessions from developers is a thin one. *Compare Sylvania Elec. Prods. Inc. v. Newton,* 344 Mass. 428, 183 N.E.2d 118 (1962) *and Church v. Islip,* 8 N.Y.2d 254, 168 N.E.2d 680, 203 N.Y.S.2d 866 (1960) *with New Prods. Corp. v. North Miami,* 241 So. 2d 451 (Fla. Dist. Ct. App. 1970); *Hedrich v. Niles,* 112 Ill. App. 2d 68, 250 N.E.2d 791 (1969) *and Allred v. Raleigh,* 277 N.C. 530, 178 S.E.2d 432 (1971). Consistent with the type of abuse noted in the above cases, the unreasonable lapse of time alone, without an express showing of coercion, can prove unconstitutionally detrimental to a developer harmed by this action.

▮ The time limit within which the County was required to act, absent other lawful reasons, is established by RCW 58.17.140.[1] The statute does permit the Council to refer the application to the applicant for modification or correction but this must occur within the 90–day period from filing. Notification by the hearing examiner to Norco of ·the need for health department approval occurred on

---

[1] "Preliminary plats of any proposed subdivision and dedication shall be approved, disapproved, or returned to the applicant for modification or correction within ninety days from date of filing thereof unless the applicant consents to an extension of such time period: *Provided,* That if an environmental impact statement is required as provided in RCW 43.21C.030, the ninety day period shall not include the time spent preparing and circulating the environmental impact statement by the local government agency. Final plats and short plats shall be approved, disapproved, or returned to the applicant within thirty days from the date of filing thereof, unless the applicant consents to an extension of such time period. A final plat meeting all requirements of this chapter shall be submitted to the legislative body of the city, town, or county for approval within three years of the date of preliminary plat approval. An applicant who files a written request with the legislative body of the city, town, or county at least thirty days before the expiration of this three–year period shall be granted one one–year extension upon a showing that the applicant has attempted in good faith to submit the final plat within the three–year period." RCW 58.17.140.

November 11, 1977, more than 90 days after the application was filed. The County did not act within that time period and it may not at a later date properly refer the application.

The enactment of a 90–day limitation by the Legislature was intended to forestall unwarranted delay. The statute demonstrates a clear determination to hold units of local government within responsible bounds of timeliness in dealing with land use issues.[2] Courts will not be used to circumvent such a legislative policy and we will not do so in this case.

While the trial court and Court of Appeals acted properly in supporting the trial court's restriction upon the County action, the use of the term "vested right" in the opinion of the Court of Appeals overstates the nature of Norco's right. The only right is that granted by RCW 58.17.140 and that is simply the right to have a decision based upon relevant factors made within 90 days after filing. If the County were to grant the plat application based upon factors relevant during the statutory time period, the provisions of RCW 58.17.170 would become operative. That statute provides, "Any lots in a final plat filed for record shall be a valid land use notwithstanding any change in zoning laws for a period of five years from the date of filing." Due to the unusual posture of this case, the 5–year period should run from the date of final decision of the County, not from date of filing, but in the ordinary process only the rights provided by RCW 58.17.140 are granted and no other rights accrue.

---

[2] *Cf. Niichel v. Lancaster*, 97 Wn.2d 620, 647 P.2d 1021 (1982) (holding "shall" is directive and not mandatory in the context of RCW 84.40.040). Petitioner has not seriously contended that the time limit within RCW 58.17.140 is not mandatory. The statute indicates its mandatory nature not only by the use of the word "shall" but by requiring that extensions be consented to by the applicant. Moreover, no governmental purpose is undermined by the mandatory time limitation of the statute. The County need only "approve, disapprove or return to the applicant for modification" the plat application. The statute provides for extensions and accommodates the process of filing an environmental impact statement. Petitioner has not contended its functions would be undermined by the 90–day time limit of RCW 58.17.140.

## II

Not only is the County's discretion limited by the procedural requirements of the statute, it is also limited by the land use restrictions that existed at the time the statutory time period had run. The County argues that even if it were limited to approving or disapproving Norco's plat application within the statutory time limit, it could have considered the pending Soos Creek Plan as a basis for disapproving Norco's application under RCW 58.17.110.[3] That statute permits the county council to consider such factors as the "public use and interest" and the "public health, safety, and general welfare . . ." But to interpret these terms as conferring unlimited discretion upon the Council would make the other sections of the platting statute meaningless and place plat applicants in the untenable position of having no basis for determining how they could comply with the law. RCW 58.17.010 specifically requires plats to "conform to zoning standards and local plans and policies" while RCW 58.17.100, in turn, requires a plat to conform with "the comprehensive plan and to planning standards and specifications as adopted by the . . . county." If the Council may dictate its own agenda of rele-

---

[3] "The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine if appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds, and shall consider all other relevant facts and determine whether the public interest will be served by the subdivision and dedication. If it finds that the proposed plat makes appropriate provisions for the public health, safety, and general welfare and for such open spaces, drainage ways, streets, alleys, other public ways, water supplies, sanitary wastes, parks, playgrounds, sites for schools and schoolgrounds and that the public use and interest will be served by the platting of such subdivision, then it shall be approved. If it finds that the proposed plat does not make such appropriate provisions or that the public use and interest will not be served, then the legislative body may disapprove the proposed plat. Dedication of land to any public body, may be required as a condition of subdivision approval and shall be clearly shown on the final plat. The legislative body shall not as a condition to the approval of any plat require a release from damages to be procured from other property owners." RCW 58.17.110.

vant criteria for plat approval, how are developers to intelligently go about conforming plat applications to the County's requirements? Why bother adopting the Soos Creek Plan if it may be given the full force of law via the Council's exercise of discretion?

The cases cited by the County are inapposite. In *Department of Natural Resources v. Thurston Cy.*, 92 Wn.2d 656, 601 P.2d 494 (1979) and *Jones v. Woodway*, 70 Wn.2d 977, 425 P.2d 904 (1967) we allowed counties some latitude in what may be considered in approving plat applications. *Department of Natural Resources* authorized councils to address pertinent environmental factors in addition to the existing comprehensive plan and planning standards in determining what was in the "public interest". That case, however, only authorized the application of an existing law, the state environmental policy act, to the application process, and did not authorize consideration of yet to be adopted or unarticulated factors. Requiring counties to consider public policy concerns that extend beyond their immediate boundaries, *see Associated Home Builders of Greater Eastbay, Inc. v. Livermore*, 18 Cal. 3d 582, 557 P.2d 473, 135 Cal. Rptr. 41 (1976), is not the same as allowing counties to base land use decisions on local concerns that are not part of the existing regulatory scheme, and that may never become established policies of the county.

*Jones* also does not furnish support to the County's position. There we permitted the council to disapprove a plat application at a time when the town had no zoning restrictions. The town council disapproved appellants' preliminary plat application because "the available water supply for plaintiffs' proposed subdivision was inadequate to serve said subdivision." 70 Wn.2d at 980. There, the council had not yet adopted platting rules. We only held that in the absence of rules the town still had the inherent power to either approve or disapprove a plat for nonarbitrary reasons. Once rules are established, they must be followed.

Neither case relied upon by the County permitted an

agency of government to consider yet to be adopted zoning proposals as a basis to render meaningless existing zoning requirements. The County acted beyond its statutory authority and the trial court's writ of mandate prohibiting the Council from considering the proposed Soos Creek Plan or proposed area–wide rezoning in deciding upon Norco's plat application was therefore appropriate.

The decisions of the trial court and the Court of Appeals do not undermine the County's ability to proceed with flexibility and sensitivity to future concerns. The County had the ability to avoid entirely prospective planning circumvention by adopting interim zoning pursuant to RCW 36.70.790. That statute provides, "the board, in order to protect the public safety, health and general welfare may, after report from the commission, adopt as an emergency measure a temporary interim zoning map the purpose of which shall be to so classify or regulate uses and related matters as constitute the emergency."

We explained in *Smith v. Skagit Cy.*, 75 Wn.2d 715, 739, 453 P.2d 832 (1969) the conditions under which such interim zoning may occur.

> An interim zoning may be accomplished through adoption by the board of county commissioners of an interim zoning map and ordinance which shall serve to classify or regulate the use of land when warranted as an emergency measure to safeguard the public welfare pending completion of the zoning scheme and as a safeguard against manipulation of land uses in contemplation of a final zoning law.

By failing to so proceed the County deprived Norco of the opportunity to contest the merits of such interim zoning altering the density of Star View Acres at public hearings held pursuant to the amendment of the County's existing comprehensive plan. RCW 36.70.380. In light of the County's failure to use the powers it had at its disposal under law, the trial court's writ of mandamus was an entirely appropriate response to the County's lengthy deferral of a decision on Norco's plat application in violation of RCW

58.17.140.

The trial court and the Court of Appeals are affirmed as modified by this opinion.

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, DOLLIVER, WILLIAMS, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied October 1, 1982.