[No. 13139–7–I.   Division One.   August 7, 1985.]

PAUL CARLSON, ET AL, *Appellants,* v. THE TOWN OF BEAUX ARTS VILLAGE, ET AL, *Respondents.*

*Powe, Housh, Bingham & Allen* and *Lucas A. Powe,* for appellants.

*Hillis, Phillips, Cairncross, Clark & Martin* and *Glenn J. Amster,* for respondents.

WEBSTER, J.—Plaintiffs Paul and Frances Carlson appeal the order of the King County Superior Court dismissing with prejudice plaintiffs' complaint and petition for writ of review and mandamus. Plaintiffs contend the trial court erred in holding that: (1) town ordinance 126 confers discretionary authority upon the Town Council to approve, deny, or approve with conditions any short subdivision application submitted for review; (2) the Town Council's review and denial of the Carlsons' application for a short subdivision was a discretionary act; (3) the Town Council validly exercised the Town's police powers in denying Carlsons' application; and (4) the decision of the Town Council denying Carlsons' application was not unlawful, arbitrary or capricious. We reverse.

For more than 30 years, the Carlsons have resided and owned property in the Town of Beaux Arts Village. Defendant Town of Beaux Arts Village, a fourth class town, was incorporated in 1954.

Presently, the Town contains just over 100 privately owned separate parcels of real estate, the vast majority of which have been developed with single–family residences.

Since 1954, the property within the Town has been regulated by ordinances of the Town.

On January 8, 1963, the Town Council adopted ordinance 32, which established the minimum size of building sites within the Town at 10,000 square feet.

On August 8, 1978, the Town Council adopted resolution 46 creating a short plat study committee to consider the advisability of increasing the minimum lot size within the Town and of requiring the lot lines of divided parcels to be in a configuration consistent with the lot lines of established parcels of real property in the area.[1] The committee learned that the overwhelming majority of the residents did not wish to have the minimum lot size increased, but would support specific requirements as to lot configurations.

On December 13, 1979, the Town Council enacted ordinance 147 (the zoning ordinance), increasing the minimum size of building sites within the Town to 13,500 square feet and adopting specific requirements regarding configuration of building sites and lot lines. The Town Council also enacted ordinance 148 (short subdivision ordinance) which repealed the existing short subdivision ordinance and specified procedures for review and approval of short subdivisions.

On January 20, 1981, the Carlsons filed with the Town Council an application for a short subdivision of their property, an area of approximately 20,673 feet, into two lots, each containing just over 10,000 square feet.

The Carlsons were notified on April 17, 1981, that their application for the short subdivision was denied. On May 12, 1981, they requested review by King County Superior Court of the Town Council's adoption of ordinances 146, 147, and 148 and its denial of their short subdivision application. They requested a writ of mandamus to compel approval of the application.

---

[1]The study committee's report indicated that with the 10,000 square feet minimum lot size, 10 additional building sites could result from divisions of existing lots.

On February 5, 1982, an agreed order was entered granting plaintiffs' motion for a partial summary judgment declaring ordinance 147 to be illegal and void, denying plaintiffs' motion to have ordinances 146 and 148 declared illegal and directing the Town Council to reconsider the plaintiffs' application for approval of a short subdivision.

Pursuant to the terms of the agreed order, the Town Council held a second public hearing to reconsider the Carlsons' application. Concerned about the validity of ordinance 148, the new short subdivision ordinance, the Town Council reviewed the Carlsons' application under the old ordinance (ordinance 126). At the conclusion of the hearing, the Town Council again denied the Carlsons' application.

The Town Council adopted written findings of fact and conclusions of law, citing the following: (1) the proposed short subdivision created an irregular building site that would be inconsistent with the character and orderly pattern of existing development; and (2) the proposed short subdivision would be inconsistent with resolution 46 in that it would not be in the best interests of the health, safety and general welfare of the residents of the Town.

Upon motion for review, the superior court affirmed the Town Council's decision. This appeal followed.

The trial court concluded that it was within the Town Council's discretionary authority to deny the Carlsons' short subdivision application. The Carlsons argue that they acquired a vested right to subdivide their property when they filed the application. The purpose of the vested rights doctrine is to establish a date certain after which the right to develop land is judicially protected from legislative termination by rezoning. Comment, *Washington's Zoning Vested Rights Doctrine,* 57 Wash. L. Rev. 139 (1981).

The vested rights doctrine has been applied to building permits, *Hull v. Hunt,* 53 Wn.2d 125, 331 P.2d 856 (1958); shoreline development permits, *Talbot v. Gray,* 11 Wn. App. 807, 525 P.2d 801 (1974); grading permits, *Juanita Bay Vly. Comm'ty Ass'n v. Kirkland,* 9 Wn. App. 59, 510 P.2d 1140 (1973); septic tank permits, *Ford v. Bellingham–*

*Whatcom Cy. Dist. Bd. of Health,* 16 Wn. App. 709, 558 P.2d 821 (1977); and conditional use permits, *Beach v. Board of Adj.,* 73 Wn.2d 343, 438 P.2d 617 (1968). However, "[t]he Washington courts have never delineated any vesting of rights arising from or in connection with subdivision applications or approvals." 2 Washington State Bar Ass'n, *Real Property Deskbook* § 64.16 (1979).

In *Norco Constr., Inc. v. King Cy.,* 97 Wn.2d 680, 649 P.2d 103 (1982), the Supreme Court stated that the use of the term "vested rights" overstated the nature of Norco's right in connection with Norco's preliminary plat application for subdivision. In *Norco,* the court held that Norco's right was the right to have a decision based upon relevant factors made within 90 days after filing. *Norco,* at 687. Similarly, the Carlsons did not have a vested right to have their application approved, only the right to have a decision rendered by the Town Council within the applicable time period.

The Carlsons contend that a municipality may not ignore duly enacted zoning ordinances when exercising its discretion to approve or deny a subdivision application. We agree.

■■ The decision of the Town Council is reviewable for arbitrary and capricious actions. RCW 58.17.180; *State v. Rowe,* 93 Wn.2d 277, 609 P.2d 1348 (1980). Arbitrary and capricious is defined as "willful and unreasoning action, without consideration and in disregard of facts and circumstances." *Rowe,* at 284. Although the Town Council may exercise administrative discretion to approve or disapprove a subdivision application, we find that the court's holding in *Norco* dictates that the discretion be limited by the land use restrictions existing at the time the statutory time period runs.

In *Norco,* King County argued that it could consider a pending amendment to the County's comprehensive plan as a basis for disapproving Norco's preliminary plat application under RCW 58.17.110. RCW 58.17.110 allows legislative bodies to consider such factors as "the public health,

safety, and general welfare" in reaching a decision on a proposed subdivision. The court stated that

to interpret these terms as conferring unlimited discretion upon the Council would make the other sections of the platting statute meaningless and place plat applicants in the untenable position of having no basis for determining how they could comply with the law.

*Norco,* at 688.

In the instant case, the Town Council made the following findings:

5. The proposed short subdivision would divide a lot on which there now exists one single–family residence into two lots for the purpose of adding a second residence to the property. This objective would be accomplished by creating an irregularly–angled, flag–shaped lot which would surround the new lot for the existing residence.

6. The lot which is proposed to be subdivided is generally similar in shape and size to the other lots in the immediate vicinity. The two lots created by the proposed short plat would be a departure from the general layout of these other properties. Several of these adjacent lots may be subdividable in a manner similar to that proposed by the Carlsons.

From these findings the Town Council concluded:

3. The short subdivision ordinance requires the Town Council to review a proposed short subdivision for conformance with applicable Town ordinances and state statutes . . . and to insure that in accordance with RCW ch. 58.17 the proposed subdivision promotes the public health, safety, and general welfare; and

4. By Resolution No. 27 the Town Council adopted a comprehensive plan to guide future development in the Town. The proposed short subdivision creates an irregular building site that would be inconsistent with the character and orderly pattern of existing development in this area of the Town and with the Town's comprehensive planning policies and thus is not in the best interest of the Town citizens; and

5. By Resolution No. 46 the Town Council made certain findings in connection with the establishment of a short plat study committee. The proposed short subdivision is inconsistent with the policies of Resolution No.

46. The possible subdivision of this and other lots within the Town would not be in the best interests of the health, safety, and general welfare of the residents of the Town.

Accordingly, the Town Council denied the Carlsons' application.

■ Although we respect the Town Council's desire to preserve the small village–like atmosphere of Beaux Arts, small towns must be held to the same standards as larger cities with respect to zoning decisions. The Town Council cites to the comprehensive plan and the short plan study report in support of its decision to deny the application. However, Washington courts have consistently held that a comprehensive plan is no more than a general policy guide to the later adoption of official controls which is subordinate to specific zoning regulations. *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 613 P.2d 1148 (1980); *Wildner v. Winslow*, 35 Wn. App. 77, 664 P.2d 1316 (1983); *West Hill Citizens for Controlled Dev. Density v. King Cy. Coun.*, 29 Wn. App. 168, 627 P.2d 1002 (1981). Planning agency reports and recommendations are advisory only. *Barrie v. Kitsap Cy., supra.*

The Carlsons complied with all applicable enacted ordinances in submitting their application for subdivision. The Town Council has pointed to no ordinance which prohibits an irregularly shaped lot. Since ordinance 147 was declared invalid, the minimum lot size remains 10,000 square feet. The two new lots resulting from the short subdivision will meet the statutory minimum lot size. To allow the Town Council to deny the application based on "the best interests of the Town's Citizens" would put the Carlsons, like the applicants in *Norco*, in the predicament of having no basis for determining how they could comply with the law. Consequently, we find that the actions of the Town Council were arbitrary and capricious.

Based on the foregoing conclusions, the decision of the lower court is reversed, and the case is remanded to the trial court for the issuance of a writ of mandamus compel-

ling the approval of the Carlsons' application.

SCHOLFIELD, A.C.J., and GROSSE, J., concur.

Review denied by Supreme Court October 18, 1985.