

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

POTALA VILLAGE KIRKLAND, LLC, a
Washington limited liability company,
and LOBSANG DARGEY and TAMARA
AGASSI DARGEY, a married couple,

    Respondents,

     v.

CITY OF KIRKLAND, a Washington
municipal corporation,

    Appellant.

No. 70542-3-I

DIVISION ONE

PUBLISHED

FILED: August 25, 2014

  Cox, J. — Washington's vested rights doctrine originated at common law but is now statutory.[1] Under RCW 19.27.095(1), vesting occurs on the filing of a "valid and fully complete building permit application." In such an event, the "zoning or other land use control ordinances in effect on the date of the application" shall control.[2]

  Here, Lobsang Dargey, Tamara Agassi Dargey, and Potala Village Kirkland, LLC (collectively "Potala Village") sought to develop certain real

---

[1] Town of Woodway v. Snohomish County, 180 Wn.2d 165, 173, 322 P.3d 1219 (2014).

[2] RCW 19.27.095(1).

property in the City of Kirkland. Potala Village filed a complete application for a shoreline substantial development permit on February 23, 2011. But it did not file an application for a building permit before the City imposed a moratorium on the issuance of certain permits. The filing of the application for the shoreline substantial development permit is not a building permit application. Thus, it did not vest on February 23, 2011 rights to then-existing zoning or other land use control ordinances. We reverse the grant of summary judgment to Potala Village and remand with directions to grant summary judgment to the City.

The material facts are undisputed, as all parties expressly acknowledge in their appellate briefing.[3]

Potala Village sought to construct a large mixed-use project in the Neighborhood Business ("BN") Zone of the City. The project is to include residential, retail, and commercial space.

Potala Village had two meetings with the City in 2009 and 2010. These meetings resulted in a determination that multiple permits for the project would be required. Because a small portion of the project is to be located within an area subject to state and local shoreline laws, Potala Village was required to file an application with the City for a shoreline substantial development permit.

On February 23, 2011, Potala Village filed an application for a shoreline substantial development permit for the portion of the proposed development

---

[3] Appellant City of Kirkland's Opening Brief at 5-6; Respondents' Opening Brief at 3.

within the shoreline area.[4] It did not file an application for a building permit for the entire proposed development, although no law prohibited it from doing so. On May 11, 2011, the City issued a letter of completeness for the shoreline substantial development permit application.

An organized group of neighbors publicly voiced objections to the proposed development. The group particularly objected to the proposed residential density for Potala Village. It appears that surrounding residential properties are zoned for a maximum density of 12 units per acre.

On November 15, 2011, the City enacted an ordinance imposing an emergency development moratorium on the BN zone. The moratorium temporarily precluded the issuance of permits in the BN zone. As of the date of the moratorium, Potala Village still had not filed an application for a building permit.

On May 1, 2012, the City Council extended the moratorium for six months. Shortly thereafter, Potala Village commenced this action against the City, alleging multiple causes of action and seeking declaratory and other relief.

Potala Village attempted to file a building permit application on October 16, 2012. The City declined to accept it because of the existing moratorium. Later that same day, the City extended the moratorium for the final time.

On December 11, 2012, the City Council amended the city zoning code in a number of ways. For purposes of this action, the code changes to the BN zone placed a limit on residential density of 48 units per acre. As amended, the code

---

[4] Respondents' Opening Brief at 6.

limits Potala Village's project to 60 units instead of the 143 units that it sought to construct.

The City approved Potala Village's shoreline substantial development permit application on January 17, 2013.

All parties to this litigation moved for summary judgment. The City argued that Potala Village's failure to file a completed building permit application before the building permit moratorium of November 15, 2011 precluded vesting of rights to zoning or other land use control ordinances in effect prior to that date. It argued that the filing of the shoreline substantial development permit application on February 23, 2011 did not vest such rights.

Potala Village disagreed. It took the position that the filing of its completed shoreline substantial development permit application on February 23, 2011 for a portion of the project was sufficient to vest rights to the zoning or other land use control ordinances in effect on that date for the entire project. It sought a writ of mandamus directing the City to accept and process a building permit application for the project.

The trial court granted summary judgment to Potala Village and issued a writ of mandamus. The court denied the City's motion for reconsideration.

The City appeals.

## VESTED RIGHTS DOCTRINE

The City argues that Potala Village did not file an application for a building permit and, thus, it had no right to vest to the zoning or other land use control

ordinances that existed at the time it filed its shoreline substantial development permit application on February 23, 2011. We agree.

This court reviews the grant of summary judgment de novo.[5] Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[6] This case presents a question of law, which this court reviews de novo.[7]

*Background*

The vested rights doctrine "originated at common law."[8] "Washington's vested rights doctrine strongly protects the right to develop property."[9] This doctrine uses a "date certain" standard.[10] "Under the date certain standard, developers are entitled 'to have a land development proposal processed under the regulations in effect at the time a complete building permit application is filed, regardless of subsequent changes in zoning or other land use regulations.'"[11]

A date certain standard "ensures that 'new land-use ordinances do not unduly oppress development rights, thereby denying a property owner's right to

---

[5] Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002).

[6] CR 56(c).

[7] Town of Woodway, 180 Wn.2d at 172.

[8] Id. at 173.

[9] Id. at 172.

[10] Id.

[11] Id. at 172-73 (quoting Abbey Road Group, LLC v. City of Bonney Lake, 167 Wn.2d 242, 250, 218 P.3d 180 (2009)).

due process under the law.'"[12] This is the minority approach within the United States, and "'it offers [greater] protection of [developers'] rights than the rule generally applied in other jurisdictions.'"[13]

In the 1950s, the supreme court first adopted the common law vested rights doctrine. In Ogden v. City of Bellevue[14] and Hull v. Hunt,[15] the supreme court explained that the right to construct in accordance with the "zoning ordinances and building codes in force at the time of application for the permit" vests when a party applies for a *building permit*."[16]

In cases that followed, Washington courts applied the vested rights doctrine to permit applications other than building permit applications.[17] They included conditional use permit applications,[18] grading permit applications,[19]

---

[12] Abbey Road, 167 Wn.2d at 251 (quoting Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 637, 733 P.2d 182 (1987)).

[13] Town of Woodway, 180 Wn.2d at 173 (alterations in original) (quoting Abbey Road, 167 Wn.2d at 250).

[14] 45 Wn.2d 492, 496, 275 P.2d 899 (1954).

[15] 53 Wn.2d 125, 130, 331 P.2d 856 (1958).

[16] Id.; see also Ogden, 45 Wn.2d at 496 ("The right accrues at the time an application for a *building permit* is made." (emphasis added)).

[17] See Roger D. Wynne, Washington's Vested Rights Doctrine: How We have Muddled a Simple Concept and How We Can Reclaim It, 24 SEATTLE U. L. REV. 851, 866-67 (2001).

[18] Beach v. Bd. of Adjustment of Snohomish County, 73 Wn.2d 343, 347, 438 P.2d 617 (1968).

[19] Juanita Bay Valley Cmty. Ass'n v. City of Kirkland, 9 Wn. App. 59, 84, 510 P.2d 1140 (1973).

shoreline substantial development permit applications,[20] and septic permit applications.[21]

In 1987, the legislature enacted legislation regarding the vested rights doctrine. The session laws added two new sections to chapter 19.27 RCW and chapter 58.17 RCW, which were later codified at RCW 19.27.095(1) and RCW 58.17.033(1) respectively.[22] The session laws provide in relevant part as follows:

> NEW SECTION. Sec. 1. A new section is added to chapter 19.27 RCW to read as follows:
>
> (1) A valid and fully complete *building permit application* for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.
>
> . . .
>
> NEW SECTION. Sec. 2. A new section is added to chapter 58.17 RCW to read as follows:
>
> (1) A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed *application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision*, has been submitted to the appropriate county, city, or town official.[23]

---

[20] Talbot v. Gray, 11 Wn. App. 807, 811, 525 P.2d 801 (1974).

[21] Ford v. Bellingham-Whatcom County Dist. Bd. of Health, 16 Wn. App. 709, 715, 558 P.2d 821 (1977); Thurston County Rental Owners Ass'n v. Thurston County, 85 Wn. App. 171, 182, 931 P.2d 208 (1997).

[22] Laws of 1987, ch. 104, §§ 1–2.

[23] Id. (emphasis added).

As shown by the emphasized language, these statutory sections only refer to building permit applications and subdivision applications.[24]

In 1994, the supreme court considered whether the vested rights doctrine applied to master use permit (MUP) applications.[25] In Erickson & Associates, Inc. v. McLerran, a developer filed a completed MUP application.[26] After the application filing, a city ordinance became effective, which adversely impacted the proposed project that was the subject of the application.[27] The developer argued that the vested rights doctrine applied to the MUP application.[28] The supreme court disagreed, holding that the doctrine did not apply to the filing of MUP applications.[29]

In its analysis, the court referred to the 1987 legislation that codified the common law doctrine, at least to the extent specified in the statutes.[30] The developer argued that the doctrine was not limited to building permit applications.[31] In support, the developer cited a 1974 case from this court, Talbot

---

[24] Id.

[25] Erickson & Assocs., Inc. v. McLerran, 123 Wn.2d 864, 867, 872 P.2d 1090 (1994).

[26] 123 Wn.2d 864, 866, 872 P.2d 1090 (1994).

[27] Id. at 866-67.

[28] Id. at 867.

[29] Id. at 877.

[30] Id. at 868.

[31] Id. at 871-72.

v. Gray, which applied the doctrine to a shoreline permit.[32] The developer also cited other case authority applying the doctrine to other types of permit applications.[33] Notably, all of the cited cases preceded the 1987 legislation codifying the doctrine to the extent specified in the statutes.[34]

The supreme court agreed with the developer in Erickson that prior cases applied the doctrine in other contexts besides building permits.[35] But it concluded that the vested rights doctrine was not a "blanket rule" requiring municipalities to process all permit applications according to the rules in place at the outset.[36] Rather, this doctrine was designed to place limits on the municipalities' discretion to allow developers to plan with "'reasonable certainty.'"[37]

Years later, in Abbey Road Group, LLC v. City of Bonney Lake, the supreme court further developed what it said in Erickson concerning the effect of the 1987 legislation.[38] There, the issue was whether the filing of a site plan

---

[32] Id. at 871 (citing Talbot v. Gray, 11 Wn. App. 807, 811, 525 P.2d 801 (1974), review denied, 85 Wn.2d 1001 (1975)).

[33] Id. at 871-72 (citing Juanita Bay Valley Cmty. Ass'n, 9 Wn. App. at 83-84; Ford, 16 Wn. App. at 715; Norco Constr., Inc. v. King County, 97 Wn.2d 680, 649 P.2d 103 (1982)).

[34] See id.

[35] Id. at 872-73.

[36] Id. at 873.

[37] Id. (quoting West Main Assocs. v. City of Bellevue, 106 Wn.2d 47, 51, 720 P.2d 782 (1986)).

[38] 167 Wn.2d 242, 251, 218 P.3d 180 (2009) (citing RCW 19.27.095(1)).

9

without also filing a building permit application vested Abbey Road's development rights.[39] The supreme court affirmed the court of appeals' decision, which held that filing a building permit application was necessary.[40]

In reaching that result, the supreme court stated that Erickson largely controlled its decision.[41] The court confirmed that in the absence of a local vesting ordinance specifying an earlier vesting date, "RCW 19.27.095(1) is the applicable vesting rule."[42] Noting Abbey Road's failure to address this statute, the court rejected the request to overrule its decision in Erickson.[43] And the court expressly rejected the invitation to extend the vested rights doctrine to other situations, stating in a footnote:

> Abbey Road also argues that we should expand the vested rights doctrine based on case law, contending that there is no "rational reason" for refusing to expand the doctrine to site plan applications when the courts have done so in other contexts. . . . See Juanita Bay Valley Cmty. Ass'n v. City of Kirkland, 9 Wn. App. 59, 510 P.2d 1140 (1973) (grading permit applications); Talbot v. Gray, 11 Wn. App. 807, 525 P.2d 801 (1974) (shoreline permit applications); Ford v. Bellingham-Whatcom County Dist. Bd. of Health, 16 Wn. App. 709, 558 P.2d 821 (1977) (septic tank permit application); Beach v. Bd. of Adjustment, 73 Wn.2d 343, 438 P.2d 617 (1968) (conditional use permit applications); Weyerhaeuser v. Pierce County, 95 Wn. App. 883, 976 P.2d 1279 (1999) (conditional use permit applications). *Again, in Erickson, we considered and rejected*

---

[39] Id. at 249.

[40] Id. at 248, 261.

[41] Id. at 252.

[42] Id.

[43] Id. 252-53.

*similar arguments, and we are not persuaded to overrule our analysis or holding in* Erickson.[44]

The court then stated that it could not ignore the legislative directive set forth in RCW 19.27.095(1).[45] And it also said that this 1987 statute and the analysis in Erickson superseded a prior case to the contrary.[46]

Importantly, the Abbey Road court stated that the legislature, not the judiciary, is best suited to reform the vested rights doctrine:

> Abbey Road urges this court to establish a uniform vesting point "for every land use permit application regardless of the permit's name or what it does or does not do." *We find that such a rule would eviscerate the balance struck in the vesting statute.* While some of Abbey Road's arguments could support a change in the law, *instituting such broad reforms in land use law is a job better suited to the legislature.*[47]

Most recently, in Town of Woodway v. Snohomish County, the supreme court reiterated that "[w]hile it originated at common law, *the vested rights doctrine is now statutory.*"[48] This statement is fully consistent with the case law and statutes that we have discussed in tracing the development of the vested rights doctrine.

---

[44] Id. at 253 n.8 (emphasis added).

[45] Id. at 253.

[46] Id. at 254 (citing Victoria Tower P'ship v. City of Seattle, 49 Wn. App. 755, 745 P.2d 1328 (1987)).

[47] Id. at 260-61 (emphasis added) (citations omitted) (citing Wynne, supra, at 916-17).

[48] 180 Wn.2d 165, 173, 322 P.3d 1219 (2014) (emphasis added) (citing Erickson, 123 Wn.2d at 867-68; RCW 19.27.095(1) (building permits); RCW 58.17.033(1) (subdivision applications); RCW 36.70B.180 (development agreements)).

*Application*

Here, the issue is whether, in the absence of filing a building permit application, the vested rights doctrine applies to vest rights to zoning or land use control ordinances for the project that existed at the time Potala Village filed its shoreline substantial development permit application on February 23, 2011. The validity of the moratorium on the issuance of permits that the City imposed before Potala Village attempted to file its building permit application is not at issue in this appeal.

To resolve the issue on appeal, we are guided by the supreme court's decisions in Erickson and Abbey Road and its most recent statement in Town of Woodway: "While it originated at common law, the vested rights doctrine is now statutory."[49]

With these points in mind, we hold that the filing of the application for the shoreline substantial development permit, without filing an application for a building permit, did not vest rights to zoning or other land use control ordinances.

We turn first to RCW 19.27.095(1), which states:

A valid and fully complete **building permit application** for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.[50]

---

[49] Id.

[50] (Emphasis added.)

As previously noted, the plain words of this statute include "building permits" but do not include shoreline substantial development permits. We must presume that the legislature was aware of the then-existing common law regarding the vested rights doctrine when it passed this legislation.[51] Yet the legislature only codified the vested rights doctrine to the extent of building permits in this section of the session laws.[52] Thus, we further conclude from the exclusion of shoreline substantial development permits that the legislature intended that the vested rights doctrine would not extend to such permits.[53]

The Final Bill Report for enactment of this legislation in 1987 reinforces our conclusion. It states as follows:

FINAL BILL REPORT

SSB 5519

. . .

SYNOPSIS AS ENACTED

BACKGROUND:

Washington State has adhered to the current vested rights doctrine since the Supreme Court case on State ex rel. Ogden v. Bellevue, 45 Wn.2d 492 (1954). The doctrine provides that a party filing a

---

[51] Woodson v. State, 95 Wn.2d 257, 262, 623 P.2d 683 (1980) ("[T]he legislature is presumed to know the existing state of the case law in those areas in which it is legislating.").

[52] Laws of 1987, ch. 104, § 1.

[53] Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 750, 317 P.3d 1037 (2014) ("Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusion alterius—specific inclusions exclude implication." (internal quotations marks omitted)).

13

timely and sufficiently complete building permit application obtains a vested right to have that application processed according to zoning, land use and building ordinances in effect at the time of the application. The doctrine is applicable if the permit application is sufficiently complete, complies with existing zoning ordinances and building codes, and is filed during the period the zoning ordinances under which the developer seeks to develop are in effect. If a developer complies with these requirements, a project cannot be obstructed by enacting new zoning ordinances or building codes. West Main Associates v. Bellevue, 106 Wn.2d 47 (1986).

. . .

SUMMARY: The vested rights doctrine established by case law is made statutory, with the additional requirement that a permit application be fully completed for the doctrine to apply. The vesting of rights doctrine is extended to applications for preliminary or short plat approval. The requirements for a fully completed building permit application or preliminary on short plat application shall be defined by local ordinance.[54]

The background statement shows that the legislature was aware of the common law origins of this doctrine, citing Ogden. Notably, that was a case that applied the doctrine to a building permit.[55] Thus, the legislature chose to codify the vested rights doctrine, but only to the extent of building permits, as the plain language of the statute specifies.

We also note that the legislature also chose to extend the vested rights doctrine to completed applications for preliminary plat approval of subdivisions or short plat approval for short subdivisions at the same time it codified the doctrine to the extent of building permits. We conclude from this that the legislature considered a wider scope of permit types to which the doctrine might apply

---

[54] FINAL B. REP. on S.S.B. 5519, 50th Leg., Reg. Sess. (Wash. 1987).

[55] Ogden, 45 Wn.2d at 493, 496.

beyond building permits. Yet, the legislature chose not to include applications for shoreline substantial development permits within its 1987 codification of the vested rights doctrine. Because these statutes are essentially the same now as when first enacted, we conclude the extent of codification of the vested rights doctrine remains the same.

Potala Village ignores RCW 19.27.095(1). It also fails to persuasively address Town of Woodway, Abbey Road, and Erickson, all of which trace the supreme court's evolving views on whether and to what extent the vested rights doctrine applies.

The trial court granted Potala Village's motion for summary judgment and issued a writ of mandamus directing the City to accept and process Potala Village's building permit application.[56] In doing so, the trial court cited in its order this court's 2013 decision that preceded the supreme court's decision in Town of Woodway.[57] We view this citation as likely a reference to language in this court's opinion that cited Talbot in the discussion of the development of the vested rights doctrine over time.[58] Accordingly, we turn to this court's 1974 decision in Talbot to consider its effect on the question before us.

---

[56] Clerk's Papers at 992-95.

[57] Id. at 995 (providing the citation, "Town of Woodway v. Snohomish County, 172 Wn. App. 643 (2013)").

[58] Town of Woodway v. Snohomish County, 172 Wn. App. 643, 652, 291 P.3d 278 (2013), aff'd, 180 Wn.2d 165, 322 P.3d 1219 (2014) (citing Talbot, 11 Wn. App. at 811).

There, the City of Seattle granted the Grays "a permit" authorizing them to construct a dock.[59] The Grays' neighbors, the Talbots and the Hartmans, brought an action to permanently enjoin the City from authorizing the construction of a dock in the shoreline area along Lake Washington.[60]

Primarily at issue was whether the City had correctly applied the provisions of its zoning ordinance in issuing the permit for construction of the dock.[61] This court construed the City zoning ordinance and rejected the contention that the dock was not permitted as an "accessory use."[62]

The court then considered the contention that the owners of the property where the dock was to be built had not given proper notice under the Shoreline Management Act of 1971, as implemented by Seattle's ordinance.[63] Specifically, the notice was given as required by the state statute and before the effective date of the Seattle implementing ordinance.[64] Thus, the question was which notice provision prevailed.[65]

This court answered the question as follows:

---

[59] Talbot, 11 Wn. App. at 808-09.

[60] Id.

[61] Id.

[62] Id. at 811.

[63] Id.

[64] Id.

[65] Id.

> [The permit applicant's] obligations and rights to develop vested on November 18, 1971, when they applied for a **substantial development permit**. The applicable rule adopted by the court in Hull v. Hunt, 53 Wn.2d 125, 331 P.2d 856 (1958) and recently approved in Eastlake Community Council v. Roanoke Assoc., Inc., 82 Wn.2d 475, 481, 513 P.2d 36 (1973) is
>
> "[T]he right vests when the party . . . applies for his **building permit**, if that permit is thereafter issued. This rule, of course, assumes that the permit applied for and granted be consistent with the zoning ordinances and building codes in force at the time of application for the permit."[66]

Potala Village argues that we should read Talbot to require applying the vested rights doctrine to this case, despite its failure to file an application for a building permit before passage of the moratorium. We decline to do so.

First, in that case, the property owners who sought to construct a dock in the shoreline area applied for and received what can properly be described as a building permit under the City's zoning ordinances.[67] Here, unlike that case, Potala Village failed to file any application for a building permit before the moratorium went into effect.

Second, as the above excerpt from Talbot shows, this court applied the common law rule regarding vested rights for **building permit** applications to the shoreline substantial development permit application under the facts of that case.[68] But we do not read that 1974 decision to support Potala Village's argument in this case—that the February 23, 2011 filing of an application for a

---

[66] Id. (emphasis added) (quoting Eastlake Cmty. Council v. Roanoke Assocs., Inc., 82 Wn.2d 475, 481, 513 P.2d 36 (1973)).

[67] See id. at 809.

[68] Id. at 811.

17

shoreline substantial development permit for a portion of this project vests rights to the zoning or land use control ordinances for the entire project that existed as of that date. We simply cannot agree with this argument because it directly contradicts the development of the law in Erickson, Abbey Road, and Town of Woodway.[69]

Potala Village makes a number of arguments to support its assertion that the vested rights doctrine applies to shoreline substantial development permits. None are persuasive.

First, Potala Village cites a number of cases to support its assertion.

Two of these cases on which it relies were decided before the 1987 legislation that we discussed previously in this opinion.[70] Thus, they are not persuasive.

Potala Village also relies on the supreme court case, Buechel v. State Department of Ecology, which was decided after 1987.[71] But that case did not expressly consider the issue present in this case because the landowner applied for a building permit and a variance.[72] Thus, that case is unlike this case where there is no building permit application.

---

[69] Town of Woodway, 180 Wn.2d at 173.

[70] Respondents' Opening Brief at 27 (citing Norco Constr., Inc., 97 Wn.2d at 684; Carlson v. Town of Beaux Arts Vill., 41 Wn. App. 402, 405, 704 P.2d 663 (1985)).

[71] Id. (citing Buechel v. State Dep't of Ecology, 125 Wn.2d 196, 884 P.2d 910 (1994)).

[72] Buechel, 125 Wn.2d at 199 n.2.

Two other cases that Potala Village cites are not supreme court cases and were decided before Abbey Road and Town of Woodway.[73] Thus, they are not persuasive.

Second, Potala Village contends that Abbey Road and Erickson recognize that statutes "supplement[] common law vesting."[74] It points to language in these opinions that it claims supports recognizing the common law vested rights doctrine.[75] Abbey Road points to Erickson, which stated,

> Erickson contends the Court of Appeals decision in this case conflicts with prior decisions applying the vested rights doctrine in other contexts. See, e.g., Talbot v. Gray, 11 Wn. App. 807, 811, 525 P.2d 801 (1974) (shoreline permit) . . . . We agree with Erickson that our prior cases apply the vested rights doctrine in other contexts besides building permits.[76]

But, as previously discussed, the supreme court also explained in those cases that the legislature "codified these judicially recognized principles" in 1987.[77] And most recently the supreme court expressly stated that "the vested rights doctrine *is now statutory*."[78] Given the supreme court's statements in these cases, we reject Potala Village's arguments to the contrary.

---

[73] Respondents' Opening Brief at 27 (citing Weyerhaeuser v. Pierce County, 95 Wn. App. 883, 893 n.12, 976 P.2d 1279 (1999); Westside Bus. Park, LLC v. Pierce County, 100 Wn. App. 599, 603, 5 P.3d 713 (2000)).

[74] Id. at 35-36.

[75] See Abbey Road, 167 Wn.2d at 253 n.8; Erickson, 123 Wn.2d at 871-73.

[76] Erickson, 123 Wn.2d at 871-73.

[77] Abbey Road, 167 Wn.2d at 251; see also Erickson, 123 Wn.2d at 868.

[78] Town of Woodway, 180 Wn.2d at 173 (emphasis added).

Third, Potala Village argues that "Abbey Road and Erickson are substantively irrelevant because both cases addressed permits which were exclusively created by cities, unlike the state's shoreline permit requirement."[79] It also asserts that the shoreline permit review process is rigorous and much like the building permit review process.[80] Whether or not these assertions are true, the legislature has not extended vested rights principles to shoreline permits. Potala Village points to no authority that allows this court to "ignore the legislative directive" that vested rights principles applies in specified circumstances, which do not include shoreline permits.[81] Thus, these arguments are not persuasive.

Fourth, Potala Village cites Noble Manor Co. v. Pierce County to assert that the "vested rights doctrine was originally established through common law, but now is based on both common law and statutory authority, depending on the type of permit application involved."[82]

There, the supreme court was concerned with the filing of a short plat application.[83] It explained the development of vested rights:

> At common law, this state's doctrine of vested rights entitled developers to have a land development proposal processed under the regulations in effect at the time a complete **building permit**

---

[79] Respondents' Opening Brief at 39-42.

[80] Id. at 23-27, 39-42.

[81] Abbey Road, 167 Wn.2d at 253; see also Town of Woodway, 180 Wn.2d at 173.

[82] Respondents' Opening Brief at 29 (citing Noble Manor Co. v. Pierce County, 133 Wn.2d 269, 943 P.2d 1378 (1997)).

[83] Noble Manor, 133 Wn.2d at 272, 274.

application was filed. Erickson & Assocs., Inc. v. McLerran, 123 Wn.2d 864, 867-68, 872 P.2d 1090 (1994). The doctrine at common law was extended to a number of *different types of permits*, but it was never extended to applications for preliminary plat approval or short plat approval.

In 1987, the Legislature (1) codified the traditional common-law vested rights doctrine regarding vesting upon application of building permits, and (2) enlarged the vesting doctrine to also apply to subdivision and short subdivision applications. The two parts of that statute were codified at RCW 19.27.095 (in the state building code statute) and RCW 58.17.033 (in the plats and subdivision statute).[84]

Importantly, the supreme court did not consider whether these statutes replaced the common law doctrine for "different types of permits."[85] The court did not need to address this issue because the short plat permit application was addressed by the statutes.[86]

However, Noble Manor contains language that supports Potala Village's argument that the vested rights doctrine is now "based on both common law and statutory authority, depending on the type of permit application involved."[87] There, the Noble Manor court explained why Erickson did not extend the vested rights doctrine to master use permit applications:

There was *no case law or statutory authority* to support extending the vested rights doctrine to MUP applications. This is in contrast to the present case where the Legislature has extended the doctrine to plat applications. The Erickson decision stands for the proposition that this Court will not extend the vested rights

---

[84] Id. at 275 (some emphasis added) (some citations omitted).

[85] Id.

[86] Id.

[87] Respondents' Opening Brief at 29.

21

doctrine by judicial expansion. However, the Court of Appeals decision in the present case is based not on common-law extension of the doctrine but on the legislative extension of the doctrine to subdivision applications in RCW 58.17.033.[88]

While this language from Noble Manor supports Potala Village's argument, this case came before Abbey Road and Town of Woodway, where the supreme court appears to have rejected the notion that the vested rights doctrine is based on both common law and statutes.

Similarly, Potala Village cites Weyerhaeuser v. Pierce County to assert that the "vested rights doctrine, and the protections it affords, are the same protections irrespective of whether the doctrine applies as a result of common law or statute."[89] But, as just discussed, that Division Two case also came before Abbey Road and Town of Woodway. Moreover, the Abbey Road court expressly rejected a similar argument regarding Weyerhaeuser.[90] Thus, that case is also not helpful.

Fifth, Potala Village contends that the City "improperly frustrated the building permit application process by asserting it could require a new building permit application in the event it required any changes to the project after shoreline review."[91] Potala Village asserts that this case is like West Main

---

[88] Noble Manor, 133 Wn.2d at 279-80 (emphasis added).

[89] Respondents' Opening Brief at 29 (citing Weyerhaeuser, 95 Wn. App. 883).

[90] See Abbey Road, 167 Wn.2d at 253 n.8.

[91] Respondents' Opening Brief at 47-50.

Associates v. City of Bellevue.[92] But that case is distinguishable.

There, the supreme court explained that a person's right to develop property is "beyond question a valuable right in property."[93] And this right is partly protected by the vested rights doctrine.[94]

The court then considered whether a Bellevue ordinance met the due process standards of the Fourteenth Amendment.[95] That ordinance required a person to take a number of steps before filing a building permit application, which would give the person the ability to vest rights in the existing laws.[96] The court concluded that the ordinance violated due process:

> The City denies a developer the ability to vest rights until after a series of permits is obtained. The ordinance thus is unduly oppressive upon individuals. As the trial court noted, the pre-application procedures established by the ordinance are vague and discretionary. The City delays the vesting point until well after a developer first applies for City approval of a project, and reserves for itself the almost unfettered ability to change its ordinances in response to a developer's proposal. The ordinance completely upsets our vesting doctrine's protection of a citizen's constitutional right to develop property free of the "fluctuating policy" of legislative bodies.[97]

---

[92] Id. at 49 (citing West Main Assocs., 106 Wn.2d 47).

[93] West Main Assocs., 106 Wn.2d at 50.

[94] Id.

[95] Id. at 52.

[96] Id. at 49, 52-53.

[97] Id. at 52-53.

Here, Potala Village fails to cite any law that prevented it from filing a building permit application before the November 2011 moratorium. Thus, West Main Associates does not support the argument.

The parties have expressly agreed that there are no genuine issues of material fact. Thus, we do not consider arguments to the extent they are based on alleged factual disputes over communications between Potala Village and the City regarding the possible filing of a building permit prior to the time Potala Village actually applied for one. And, as we stated previously in this opinion, the validity of the moratorium is not at issue in this appeal. Thus, there is no reason to apply the principles of West Main Associates to this case.

To summarize, Potala Village's failure to file a completed application for a building permit before enactment of the City's moratorium on certain permits bars the vesting of rights to zoning or other land use control ordinances for the entire project. The filing of Potala Village's completed application for a shoreline substantial development permit for a portion of the project on February 23, 2011 did not vest rights to the zoning or other land use control ordinances for the entire project that existed on that date.

The City states in its briefing that Talbot, the 1974 decision of this court, may support permit vesting to the "shoreline regulations in effect" at the time of its application for the shoreline substantial development permit.[98] Because that question is not before us, we express no opinion on it.

---

[98] Appellant City of Kirkland's Opening Brief at 39.

Finally, we express no opinion on whether or to what extent the vested rights doctrine applies to permits other than shoreline substantial development permits. These questions are not before us.

## DECLARATORY JUDGMENT

The City argues, in the alternative, that even if Potala Village's rights vested to zoning or other land use control ordinances for the project upon filing of the completed application for the shoreline substantial development permit application, it is not entitled to relief under the Uniform Declaratory Judgments Act.[99] Because the vested rights doctrine does not apply to shoreline substantial development permits permit, we need not address that argument.

We reverse the order granting Potala Village's motion for summary judgment. We remand with directions to the trial court to grant the City's cross-motion for summary judgment and dismissal.

Cox, J.

WE CONCUR:

Trickey, J.

Leach, J.

---

[99] Id. at 41-43.