IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ALLIANCE INVESTMENT GROUP OF ELLENSBURG, LLC, | ) ) ) | No. 32370-6-III |
| Appellant, | ) ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| CITY OF ELLENSBURG, WASHINGTON, | ) ) ) | |
| Respondent. | ) ) | |

KORSMO, J. — This appeal once again requires us to consider the decision in

*Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 943 P.2d 1378 (1997), and its

application to an amended Critical Area Ordinance (CAO) adopted after a short plat had

been approved. We reject appellant's interpretation of *Noble Manor*, affirm the trial

court's ruling, and award respondent City of Ellensburg its attorney fees.

FACTS

Alliance Investment Group (Alliance) owns land in the City of Ellensburg (City)

that is the subject of this action. The land is zoned for light-industrial usage. Alliance

filed a short plat application with the City on February 16, 2007, to divide the property

into nine lots to develop an industrial park. While final plat approval was pending, the

City also approved a building permit for a heating company office and shop on one of the lots.

Some of the land in the short plat was within a floodplain region, a fact that caused the plat application to be carefully scrutinized to ensure compliance with the existing CAO. The short plat was approved on May 28, 2008. The following year, the City adopted a new CAO that again addressed floodplain regions.[1]

Alliance asked the City for a statement of restrictions confirming that the 2009 CAO would not apply to future building permits for its short plat. Alliance contended that its property was subject to the 2007 CAO in place at the time of the short plat. The City's Planning Director disagreed and Alliance appealed to the City's planning commission. Alliance lost that appeal and then filed a Land Use Petition Act (LUPA) action in superior court.

The superior court agreed with the City's interpretation and concluded that the 2007 CAO would not apply to future building permits. Alliance then timely appealed to this court. We accepted a joint brief from Futurewise and the Washington State Association of Municipal Attorneys as *amici curiae*.

---

[1] Our record does not demonstrate how the differences in the two ordinances would impact the Alliance property.

No. 32370-6-III
*Alliance Inv. Grp. v. City of Ellensburg*

ANALYSIS

The primary issue presented is which development rights vest upon approval of a short plat application that is not accompanied with a building permit application. We agree with the superior court and the administrative reviewers that short plat approval did not necessarily vest Alliance in the 2007 CAO for future building permits.

Washington's vested rights doctrine developed at common law, with Washington expressly adopting a minority position that generally is more favorable to property owners. Once a complete building permit application is filed, it will be considered under the then-current ordinances and regulations governing the land. *Abbey Rd. Grp. LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009). That allows certainty for the property owner who gets to choose when to vest. *Id.* at 250-51. The common law vested rights doctrine ultimately also was applied to "conditional use permit applications, grading permit applications, shoreline substantial development permit applications, and septic permit applications." *Potala Village Kirkland, LLC v. City of Kirkland*, 183 Wn. App. 191, 198, 334 P.3d 1143 (2014), *review denied*, 182 Wn.2d 1004 (2015) (footnote citations omitted).[2] However, the vesting doctrine was never extended by the courts to land division actions. *Noble Manor*, 133 Wn.2d at 280.

---

[2] For a concise, but thorough, recent history of Washington's vested rights doctrine, *see Potala Village*, 183 Wn. App. at 197-202.

The legislature in 1987 chose to codify the vested rights doctrine, adopting a statute governing vesting for plats and subdivisions as well as a statute governing vesting for building permits. The latter statute provides:

> A valid and fully complete building permit application for a structure, that is permitted under the zoning or other land use control ordinances in effect on the date of the application shall be considered under the building permit ordinance in effect at the time of application, and the zoning or other land use control ordinances in effect on the date of application.

RCW 19.27.095(1). The land division vesting statute states:

> A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.

RCW 58.17.033.

After the legislature acted, one question was whether the common law vesting doctrine continued to have any force. The Washington Supreme Court first had to address that issue in *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 872 P.2d 1090 (1994). There the question was whether the vesting doctrine should be applied to a master use permit application, a mandatory part of the development process in Seattle. *Id.* at 866. Seattle adopted a CAO after appellant filed a master use permit, but before a building permit was sought. *Id.* The developer was told to comply with the new CAO; instead, suit was filed to challenge the application of the CAO to the project. *Id.* at 866-

4

67. After a series of adverse administrative and court rulings, the developer obtained review by the Washington Supreme Court. The court declined to extend the vesting doctrine to the master use permit, reasoning that the significant legislative efforts in the field of land use regulation militated against judicial involvement absent a need to protect constitutional interests. *Id.* at 875-76.

*Erickson* was applied in *Abbey Road* to reject an argument that a site plan vested the applicant's development rights. There the developer filed a site plan application expressing an interest in developing the land into a 575-unit condominium project, but no building permits were sought at the time the plan was filed. 167 Wn.2d at 246-47. Bonney Lake then changed its zoning laws to exclude condominiums on the Abbey Road land. *Id.* at 248. The court declined to find a vesting of rights, reasoning that *Erickson* controlled and there was no basis for ignoring the vesting requirements of RCW 19.27.095(1). *Id.* at 252-53.

The issue was addressed again in *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 322 P.3d 1219 (2014). There the court flatly declared: "While it originated at common law, the vested rights doctrine is now statutory." *Id.* at 173. Reviewing the *Erickson/Abbey Road/Woodway* line of cases, along with the legislative history behind the 1987 statutes, the court in *Potala Village* rejected a contention that the filing of a complete shoreline substantial development permit vested development rights. 183 Wn. App. at 196-206. Noting that the legislature was quite aware of the various permits that

5

had been subject to common law vesting, the court found it significant that only building permits were made subject to statutory vesting and concluded that the legislature did not intend for shoreline substantial development permits to vest. *Id.* at 205.[3] Effectively, *Potala Village* decided that the legislature had pre-empted the vesting doctrine in a manner that foreclosed expansion of vesting to other permit types.[4]

In light of this authority, the question presented by Alliance would appear to be easily answered—development rights do not vest under the building permit statute until the completed building permit application is filed. RCW 19. 27.095(1). Because the legislature has comprehensively addressed land use issues, courts are not to expand the vesting doctrine. *Erickson*, 123 Wn.2d at 875-76. However, the noted cases involve the building permit vesting statute rather than the land division vesting statute, RCW 58.17.033, which also can be a source of vested development rights. The interpretation

---

[3] This court reached the same conclusion with respect to the effect of filing a SEPA (State Environmental Policy Act, chapter 43.21C RCW) checklist and rejected a construction of *Noble Manor* similar to that urged here in *Deer Creek Developers, LLC v. Spokane County*, 157 Wn. App. 1, 10-13, 236 P.3d 906 (2010), *review denied*, 170 Wn.2d 1021 (2011).

[4] *Potala Village* was not required to address the continued validity of older cases applying the common law vesting doctrine to grading and other types of permits not addressed by the legislature. Nothing in this opinion likewise should be construed as opining on whether the legislature is now the exclusive source of vesting or whether the common law rules still apply to permits not addressed by the legislature.

of that statute was at issue in *Noble Manor*, the decision on which Alliance bases its arguments here.

In *Noble Manor*, a developer initially sought to rezone land to build four duplexes on a lot sized for three duplexes. 133 Wn.2d at 272. The county denied the request and the developer then filed an application for a short plat to divide the land into three plots to accommodate the three duplexes it sought to build. *Id.* Nearly two weeks later, the developer filed three building permit applications, but the county accepted only one of them because the short plat had not yet been approved. Two months later, before approving the short plat application, the county adopted an interim zoning ordinance that increased the lot size required for a duplex, an action that prevented Noble Manor from building three duplexes on its lot. *Id.* The county subsequently approved the short plat nearly nine months after enacting its interim zoning ordinance; the approved plat recognized three duplexes on the site. *Id.* at 273. The developer re-submitted building permit applications for the two previously rejected duplexes. The county again rejected the applications, this time citing the interim ordinance. *Id.* Two weeks later the developer again submitted the building permits; this time the counter clerk accepted them based on the face of the short plat. Building began soon after. *Id.*

After substantial construction on the three buildings, the county "red-tagged" two of the buildings, delaying the project for a period of four months. On appeal, the county's hearing examiner reversed the stop-work order and construction resumed. *Id.*

The developer completed the project and then sued the county for damages caused by the delay. *Id.* The county defended on the basis that although the right to subdivide the property had vested with the application, the right to develop three duplexes had not vested prior to the interim zoning ordinance. *Id.*

The court rejected the county's argument, determining that the additional language[5] of the subdivision vesting statute did more than simply entitle the developer to the benefit of the existing subdivision ordinance at the time of the short plat application. *Id.* at 277. Instead, the court concluded that the purpose of the additional vesting language was to guarantee the developer "a vested right to have *that application* processed under the land use laws in effect at the time of the application." *Id.* at 278 (emphasis in original). Thus, a use of the land that was identified in the short plat application was also subject to the existing zoning laws. *Id.* at 283.[6]

Alliance relies on *Noble Manor* to make several arguments that we address as two. First, Alliance argues that only development laws in effect in 2007 should apply to future

---

[5] The additional language in question is denoted by underscoring: "A proposed division of land . . . shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application . . . has been submitted." RCW 58.17.033(1).

[6] The court recognized this approach in two subsequent subdivision decisions. *See, Association of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 193, 4 P.3d 115 (2000) (planned unit development filed with plat application would be built under existing development laws); *Mission Springs Inc. v. City of Spokane*, 134 Wn.2d 947, 958-59 n.12, 954 P.2d 250 (1998) (same).

building, seizing upon language in the opinion recognizing that the legislature "has made the policy decision that developers should be able to develop their property according to the laws in effect at the time they make completed application for subdivision or short subdivision of their property." *Id.* at 280. This view essentially follows the concurring opinion of Justice Sanders in *Noble Manor*. *Id.* at 288-90. Alternatively, it argues that because the 2007 CAO was applied to the plat decision, that version also must apply to future building permits. Second, Alliance argues both that *Noble Manor* only applies if the local permit required the uses to be detailed and also that it adequately identified the uses to which the property would be put on the plat application.

We give short shrift to the initial argument as it is expressly contrary to the holding of *Noble Manor*. There the court did consider whether all existing land use development regulations would vest and expressly determined that only regulations governing the identified use would vest. *Id.* at 283-85. It stated that position several times and several ways, including in its conclusion:

> Not all conceivable uses allowed by the laws in effect at the time of a short plat application are vested development rights of the applicant. However, when a developer makes an application for a specific use, then the applicant has a right to have that application considered under the zoning and land use laws existing at the time the completed plat application is submitted.
>
> If a landowner requests only a division of land without any specified use revealed, then the county, city or town may consider the application to see if any legal use can be made of the land so divided, and no particular development rights would vest at that time. However, when an application is made for division of land for a specified use, then the applicant has the

9

right to have that application for that use considered under the land use
laws in effect on the date of the application.

*Id.* at 285. Any other position would have the absurd result of freezing land use regulations forever upon submission of a short plat, leaving lawyers and judges centuries in the future the task of determining what the local ordinances were that applied to this short plat. Put another way, *Noble Manor* stands for the proposition that the government may not frustrate the owner's legitimate plans made known to it during the permitting process, but future land use policies are not required to yield to any potential, but unexpressed, use the owner desires.

Accordingly, we reject the argument that the 2007 CAO applies merely because it was a land use regulation in effect when the short plat application was filed. For similar reasons, we reject the argument that because the 2007 CAO was considered in making the short plat decision, that version necessarily has to be considered when and if a building permit is filed in the future. A CAO is an ordinance that has use in many settings. The fact that it serves one purpose in the land division setting does not mean it serves the same purpose in the building permit setting, as this case illustrates. Here, the flood plain provisions of the 2007 CAO had to be considered in determining whether or not the land could be subdivided in the manner Alliance desired. The answer to that question, however, did not also decide whether any particular desired future use of the divided property would also satisfy the flood plain provisions. Some permitted uses of a

property may conflict with the CAO and others might not, but that determination cannot be made without knowing the specific use desired and the portion of the land at issue. It would frustrate the purpose of the CAO to not consider its application to both land division actions and building requirements.

The second set of arguments fare no better. Alliance contends that the *Noble Manor* result applies only in those instances where the identified use was required to be identified in the plat application, an argument that lifts language from that decision out of context.[7] In fact, *Noble Manor* reached the opposite conclusion when, ironically, Pierce County argued against an identified use vesting rule by pointing out that it had not required the short plat applicant to identify the uses it would make of the short plat and did not use that information in making its plat decision. 133 Wn.2d at 284. Despite the fact that the identified use was not required by the Pierce County form, the court still required the county to apply the zoning law existing at the time that use was identified to it. But under Alliance's argument, *Noble Manor* itself actually was decided wrongly because the duplex usage identified by the developer there was a voluntary act rather than one required by the county's forms. The argument failed in *Noble Manor* and is no more persuasive here.

---

[7] *See* Br. of Appellant at 11 (citing to *Noble Manor*, 133 Wn.2d at 278). There the court was addressing the situation of a government ignoring information it had required of an applicant.

11

Alliance also argues that the city knew it intended to develop a business park on its property, thereby entitling it to apply the 2007 CAO to any light industrial use identified in the zoning code at that time. That conclusion does not follow from the premise. To the extent that Alliance identified a business park as its purpose in the subdivision, it likely has vested its rights to the light industrial zoning on the short plat and the uses identified at the time by the zoning laws.[8] But it has vested rights only at a very general level. Any specific project will still have to meet the development standards at the time the building permit is filed. The vesting recognized under the land division statute is specific to the action at issue, not to all possible uses permitted by law. *Noble Manor*, 133 Wn.2d at 285 ("Not all conceivable uses allowed by the laws in effect at the time of a short plat application are vested development rights of the applicant."). Here, that means—at most—the nine plats are subject to the 2007 light industrial zoning and its associated uses, but buildings to support those uses will need to conform to the building standards (and associated ordinances such as the CAO) existing at the time they are built.

The superior court correctly concluded that the 2007 CAO did not apply to any future building permits that may be sought.

The City also requests its attorney fees for prevailing a second time in this LUPA action. As relevant to this litigation, the statute provides in part:

---

[8] The scope of any vested right is not before us since the only question presented by this litigation involves the CAO.

12

> (1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision. The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
>
> (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city or town; and
>
> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.
>
> (2) In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose decision is on appeal is considered a prevailing party if its decision is upheld at superior court and on appeal.

RCW 4.84.370. Alliance argues that this appeal does not involve a "development permit," so the attorney fees statute does not apply to this case. Reply Br. at 13.

LUPA is the exclusive means of reviewing a land use decision. RCW 36.70C.030(1). That statute defines "land use decisions" very broadly, including "An interpretative or declaratory decision regarding the application to a specific property of zoning or other ordinances or rules regulating the improvement, development, modification, maintenance, or use of real property." RCW 36.70C.020(2)(b). Both LUPA and RCW 4.84.370 were enacted in the same legislation. *See* LAWS OF 1995, ch. 347, §§ 701-718. RCW 4.84.370 is the source of attorney fee awards under LUPA.

As defined above, the fee award is available to a prevailing party on an appeal of an action "to issue, condition, or deny a development permit involving a . . . plat, . . . site

13

plan, or similar land use approval or decision." RCW 4.84.370(1). This definition is not limited to development permits, but also to any "similar land use . . . decision." Although not treated as a term of art in the attorney fee statute, we still believe that the legislature intended a broad meaning for the concept of "similar land use" decision as it enacted this provision in conjunction with LUPA. The legislature treated interpretative proceedings as land use decisions for purposes of LUPA and it is entirely consistent with that statute to also treat them as land use decisions for purposes of the fee award statute.

Accordingly, as the prevailing party in both the superior court and this court, the City of Ellensburg is entitled to its attorney fees in this case. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 412-17, 120 P.3d 56 (2005). The award is subject to the City's compliance with RAP 18.1(d). Our commissioner shall consider any timely request. RAP 18.1(f).

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

14