IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EVER-GREEN TREE CARE, INC., | ) | No. 78303-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CITY OF KIRKLAND, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: July 1, 2019 |

HAZELRIGG-HERNANDEZ, J. — Kirkland Municipal code authorizes an exceptional $1,000 per tree fine for violating a tree protection plan. Ever-Green Tree Care, Inc. (corporately known as Ever-Green) received an exceptional fine for violating a pruning permit. Ever-Green asks this court to hold pruning permits are not tree protection plans. While Kirkland Municipal Code does not define tree protection plan, related provisions make it clear the exceptional fine applies to pruning permits. We affirm.

## FACTS

In January 2017, Benjamin and Nicole Krows (collectively as the Krows), and David and Sharon Berrett (collectively as the Beretts) applied for a permit to prune trees on a Kirkland right-of-way. Ever-Green was listed as the certified arborist that would do the work. After review by the city's arborist, Jerry Merkel, Kirkland approved the permit, but included handwritten notes by Merkel imposing specific limits on Krows' and Beretts' pruning work to "trim trees, skirt up to 14'-15', and remove 2 small trees."

In late March 2017, Kirkland received a complaint from a neighboring property owner and Merkel inspected the site. He found that most of the trees had been limbed up to between 40 feet and 50 feet, and had been climbed using spurs, leaving holes in the bark. Merkel visited the property again in April 2017 with Kirkland code enforcement officer Cindy Keirsey. Merkel submitted a spreadsheet to Keirsey showing that 19 of the trees had 50 percent or more of their foliage removed. Officer Keirsey sent a Notice of Tree Fines and Restoration Due to the Berretts, the Krows, and Ever-Green. The notice imposed an exceptional fine of $1000 per tree for violating the pruning permit by severely pruning or removing 19 trees.

In response, Ever-Green sent arborist reports to Kirkland disputing Merkel's report. Merkel submitted a reply. After a hearing with live testimony from Keirsey, Merkel, and representatives from Ever-Green, the hearing examiner found that 19 trees had 50 percent or more of their live crown removed. The hearing examiner upheld the fine of $19,000.

Ever-Green appealed to the Superior Court, which affirmed the hearing examiner's decision. Ever-Green appealed once again, asking this court to reverse the hearing examiner's decision.

## DISCUSSION

RCW 36.70C, the Land Use Petition Act (LUPA), controls judicial review of land use decisions. HJS Dev., Inc. v. Pierce County ex. rel. Dep't of Planning and Land Services, 148 Wn.2d 451, 467, 61 P.3d 1141 (2003). LUPA permits courts to grant relief when the land use decision erroneously interprets the law. RCW

36.70C.130(1)(b). Local ordinances are interpreted in the same manner as statutes. Griffin v. Thurston County, 165 Wn.2d 50, 55, 196 P.3d 141 (2008). Interpretation of a statute is a question of law that is reviewed de novo. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017) (citing Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). The objective of statutory interpretation is to carry out the legislature's intent. Campbell & Gwinn, 146 Wn.2d at 9. Legislative intent is derived from the text of the provisions in question, the context of the statute where the provisions are found, related provisions, and the statutory scheme as a whole. Columbia Riverkeeper, 188 Wn.2d at 432, (citing Campbell & Gwinn, 146 Wn.2d at 10-11).

RCW 36.70C.130(1)(c) allows the court to grant relief if the land use decision is not supported by substantial evidence. "Substantial evidence is evidence sufficient to convince a rational, unprejudiced person." Griffin v. Thurston County, 165 Wn.2d at 55 (citing Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wn.2d 740, 751-52, 49 P.3d 867 (2002)).

This court sits in the same position as the superior court, and reviews land use decisions on the record of the administrative tribunal. Griffin, 165 Wn.2d at 54-55 (citing Isla Verde Int'l Holdings, Inc., 146 Wn.2d at 751).

I.    A pruning permit is a tree protection plan under Kirkland Municipal Code

Resolving this case requires interpreting the Kirkland Municipal Code (KMC) and Kirkland Zoning Code (KZC). KMC 1.12.100(c)(3)(2), titled "Special provisions relating to enforcement of tree regulations in Chapter 95 KZC," provides for a $1,000 per tree fine for "[r]emoval or damage of tree(s) that are or would be

shown to be retained on an approved tree plan or any other violation of approved tree protection plan". KMC does not define the terms "tree plan" or "tree protection plan." See KMC 1.12.020. Neither does Chapter 95 KZC, "Tree Management and Required Landscaping." Ever-Green was issued a pruning permit under KZC 95.21, which does not use the words plan or protection. The text of the provisions at issue is unhelpful, but plain language analysis "looks . . . to other related provisions that illuminate legislative intent." Columbia Riverkeeper, 188 Wn.2d at 438 (citing Campbell & Gwinn, 146 Wn.2d at 11).

Each ordinance includes an express provision describing Kirkland's intent. The purpose of chapter 1.12 KMC is to enforce the regulations of the city and establish monetary penalties for violations. KMC 1.12.010. The purpose of chapter 95 KZC is to protect trees. KZC 95.05(1) ("Protecting . . . healthy trees and vegetation are key community values"); KZC 95.05(2) ("The purpose of this chapter is to establish a process and standards to provide for the protection . . . of significant trees, associated vegetation, and woodlands located in the City of Kirkland."). Because the purpose of the ordinances, taken together, is to protect trees and enforce that protection, we interpret the ordinances to advance those goals.

In addition to its title, KMC 1.12.100 refers specifically to Chapter 95 KZC in two other key locations. KMC 1.12.100(d)(1) requires "[v]iolators of chapter 95 KZC or of a permit issued thereunder. . ." to restore unlawfully damaged areas. (emphasis added). KMC 1.12.100(e) permits the city to "issue a notice of civil violation to the person(s) who violates Chapter 95 KZC or a permit issued

thereunder and fails to restore or pay fines according to the procedures set forth in this chapter." (emphasis added). "Context is particularly important when harmonizing two statutes where one references the other. The referred statute must be read in the context of the referring statute." Rivas v. Overlake Hosp. Med. Ctr., 164 Wn.2d 261, 267, 189 P.3d 753 (2008). Carefully reading KMC 1.12.100, in light of 95 KZC's purpose, shows that Kirkland intended these penalties to apply to all violations of permits issued under Chapter 95 KZC.

Ever-Green was issued a permit under the pruning provision, KZC 95.21. Ever-Green argues that the approved permit was not an approved tree protection plan and it should be liable only under the general penalty for code violations in KMC 1.12.040(e)(1)(A). It relies on the fact that KZC 95.21 at no point refers to a tree protection plan. However, nothing in Chapter 95 KZC expressly refers to a tree protection plan. Ever-Green compares the Kirkland Zoning Code section on Tree Removal, KZC 95.23, and the section on Tree Retention Associated with Development Activity, KZC 95.30, arguing that those sections require tree protection plans. While those sections differ from the pruning provision and require greater protections, including a detailed site plan (KZC 95.23(3)(a)) or a tree retention plan (KZC 95.30(2)), neither section uses tree protection plan or helps the court define the term. The different requirements between the various permits do not compel us to ignore the language imposing exceptional fines on all violations of permits issued under the chapter.

Further, the process for seeking a tree pruning permit under KZC 95.21 explicitly calls for the applicant to submit a site plan with their request. The Public

Tree Pruning Permit Application used by Kirkland contains language advising that the request will not be processed without an attached site plan. In fact, the site plan submitted with the pruning permit here substantially conforms to the site plan requirements in KZC 95.23(3)(a), showing the approximate locations of significant trees, their size and species, and relevant structures and streets. While this requirement is not contained in the ordinance, it demonstrates that Kirkland treated pruning permits requests and tree removal requests similarly and intended them to invoke the same protections.

Ever-Green acknowledges the explicit purpose of each ordinance, but fails to note the provisions of KMC 1.12.100 that make it clear the penalties apply to all violations of permits issued under Chapter 95 KZC, including pruning permits. Ever-Green's confusion is understandable. While the statutory scheme as a whole makes the legislative intent clear and supports the hearing officer's finding, Kirkland's failure to define "tree protection plan" or to use terms in each ordinance that mirror one another invites litigation to interpret the statute.

Reading KZC 95.21 in the light of KMC 1.12.100 and the express purposes of the ordinances, we affirm the conclusion of the hearing officer. The pruning permit was an approved tree plan or tree protection plan under KMC 1.12.100(c)(3)(2).

II.    Substantial evidence supported the finding that Ever-Green removed 19 trees

KZC 95.10(19)(2) defines removal of a tree as "removal of at least half of the live crown." The hearing officer found that Ever-Green removed 50 percent or

more of the foliage from 19 trees. Ever-Green challenges this factual finding, which is reviewed for substantial evidence. See RCW 36.70C.130(1)(c).

While the parties contested the amount of live crown that Ever-Green removed, substantial evidence supported the hearing examiner's finding. Kirkland's code enforcement officer testified that she received a revised tree list from Kirkland's arborist noting which trees had over 50 percent of the live crown removed. While Ever-Green argued that the city included dead branches in calculating the live crown, Kirkland's arborist testified that most of the dead wood was up to 15 feet, the height specified in the permit. Kirkland's arborist noted that Ever-Green skirted many of the trees up to 40 or 50 feet and removed live branches.

The hearing examiner was entitled to resolve the conflicting evidence in favor of Kirkland. Substantial evidence supports that decision, and we affirm the finding that 19 trees had 50 percent or more of their live crown removed.

III.     Kirkland adopted industry standards regarding climbing spurs

Ever-Green argues that the hearing examiner misinterpreted Kirkland's adoption of industry standards regarding climbing spurs. KZC 95.21 requires that "[p]runing shall conform to the most recent version of the American National Standards Institute (ANSI) A300 Part 1 – 2001 pruning standards . . . " Because the ordinance incorporates the industry standards, the court interprets their meaning like any other legislation.

The most recent version of ANSI A300 Part 1 available to Ever-Green at the time it pruned the trees was the 2008 version. ANSI A300 is divided into several

parts, each with its own title. Part 1 is titled "Pruning."[1] ANSI A300 Part 1 states "[c]limbing spurs shall not be used when entering and climbing trees for the purpose of pruning." ANSI A300 Part 1 §5.2.2 (2008). Ever-Green admits it used spurs to climb and prune many of these trees. Regarding the use of spurs, Ever-Green asks the court to decide that Kirkland did not adopt ANSI A300 Part 1 in its entirety, but only the "pruning standards". Because ANSI A300 Part 1 is entirely a manual on pruning standards, and because the purpose of Chapter 95 KZC is to protect trees, we conclude Kirkland adopted ANSI A300 Part 1 in its entirety, including the provision prohibiting the use of climbing spurs while pruning.

ANSI A300 Part 1 defines standard as "[t]he performance parameters established by industry consensus as a rule for the measure of extent, quality, quantity, value or weight used to write specifications." ANSI A300 Part 1 §4.43 (2008). It defines specifications as "[a] document stating a detailed, measurable plan or proposal for provision of a product or service." ANSI A300 Part 1 §4.41 (2008). "Specifications [for pruning] should include location of tree(s), objectives, methods (types), and extent of pruning (location, percentage, part size, etc.)." ANSI A300 Part 1 §2.3.1.1 (2008). Section 7 of ANSI A300 Part 1 defines pruning methods (types) as clean, raise, reduce, and thin. ANSI A300 Part 1 §§7.2-7.5 (2008).

Ever-Green argues that the use of spurs is not part of the location of trees, objectives, methods, or extent of pruning. It argues that because the directive not to use spurs is not part of what specifications "should include," it is not a standard.

_____

[1] ANSI A300 Standards, Tree Care Industry Association, (Mar. 21, 2019), https://www.tcia.org/TCIA/BUSINESS/ANSI_A300_Standards_/TCIA/BUSINESS/A300_Standards/A300_Standards.aspx?hkey=202ff566-4364-4686-b7c1-2a365af59669.

But Ever-Green fails to argue that the directive regarding spurs is not a "performance parameter established by industry consensus as a rule for the measure of extent, quality, quantity, value or weight" that could be included in a "detailed, measurable plan for the provision of" pruning. We affirm the judgment of the hearing examiner.

IV.     LUPA does not authorize attorney fee awards in enforcement actions

Kirkland requests attorney fees under RCW 4.84.370. "RCW 4.84.370 is the source of attorney fee awards under LUPA." Alliance Inv. Grp. of Ellensburg, LLC v. City of Ellensburg, 189 Wn. App. 763, 774, 358 P.3d 1227 (2015) (citing FINAL B. REP ON ENGROSSED SUBSTITUTE H.B. 1724, at 6, 54th Leg., Reg. Sess. (Wash. 1995)). The statute awards attorney fees and costs to the prevailing party after the review of a decision by a municipality "to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision." RCW 4.84.370(1). When the legislature uses a statutory term and lists illustrative examples, we construe the term narrowly, consistent with those examples. Maytown Sand and Gravel, LLC v. Thurston County, 191 Wn.2d 392, 427, 423 P.3d 223 (2018).

We cannot award attorney fees in this case because Kirkland's decision to cite Ever-Green for violating a permit is not similar to a decision to issue, condition,

or deny a permit. In defining land use decisions, LUPA separates decisions regarding issuing permits and decisions to enforce ordinances. See RCW 36.70C.020(2)(a), (c). LUPA expressly authorizes awarding attorney fees for appeals regarding decisions to issue, deny, or condition permits, and does not authorize attorney fees for decisions to enforce ordinances. Here, Kirkland had already approved and issued the pruning permit. Ever-Green did not challenge that decision. The decision appealed here is an enforcement decision, not a decision to issue, condition, or deny the permit. Cases awarding attorney's fees after prevailing in a LUPA appeal of an enforcement decision do not appear to have considered the argument. See Mower v. King County, 130 Wn. App. 707, 720-21, 125 P.3d 148 (2005); See also First Pioneer Trading Co., Inc. v. Pierce County, 146 Wn. App. 606, 618, 191 P.3d 928 (2008). Because LUPA does not authorize the award of attorney fees in a case regarding an enforcement decision, we may not award attorney fees to Kirkland.

Affirmed.

WE CONCUR: