## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SHADOW CREEK INVESTMENTS, LLC,
a Washington limited liability company;
and JEROD BARTH, in his individual
capacity,

           Appellants,

        v.

CITY OF ANACORTES, a Washington
municipal entity,

           Respondent.

No. 86285-5-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Shadow Creek Investments, LLC, and its principal, Jerod Barth (collectively, Shadow Creek), appeal from the trial court's order granting summary judgment in favor of the City of Anacortes (the City) and dismissing Shadow Creek's complaint seeking a peremptory writ of mandamus and declaratory relief. We affirm.

**I**

In June 2012, Shadow Creek filed an application with the City's Planning, Community and Economic Development Department (the Department) for a planned unit development permit, conditional use permit, and preliminary plat permit (the PUD Application) to develop several residential housing units on

approximately 2.5 acres of real estate (the Property). In November 2014, the Department's Senior Planner, Libby Grage, informed Barth the PUD Application was deemed complete but "additional and clarified information is needed in order to further process the application." Grage and Barth continued to discuss the PUD Application over several more years, with Barth submitting additional information to the Department and Grage responding that the additional submissions were insufficient for various reasons and reminding Barth that the PUD Application would not be processed until he provided all of the requested information.

Meanwhile, in 2014, the City began updating its comprehensive plan and critical areas ordinance (CAO) as required by the Growth Management Act (GMA). *See* RCW 36.70A.130(1). The term "critical areas" refers to certain areas and ecosystems, such as wetlands and fish and wildlife habitat conservation areas, that are protected under the GMA and local CAOs enacted in accordance therewith. *See* RCW 36.70A.030(11); RCW 36.70A.060(2). In 2021, the City replaced its existing CAO (the "Prior CAO") with a new CAO by enacting Anacortes Ordinance (AO) 3064 in 2021 and AO 4025 in 2022 (collectively referred to as the "New CAO").

The Property at issue here contains two streams and several wetlands associated with these streams. When Shadow Creek initially submitted its PUD Application in 2012, it provided a critical areas report that conducted a wetland and stream delineation for the Property and evaluated the project under the Prior CAO then in effect. On August 2, 2022, after the City enacted the New CAO, the Department Director informed Barth that the new CAO "is applicable to this project"

and "[t]he Professional Wetland Scientist/Biologist will need to evaluate the project based on Ordinance 3064 and provide an updated critical areas report." Barth's attorney replied that "imposition of current CAO regulations on this project . . . would limit the property to about two lots" and asked to have the application processed under the Prior CAO. The City's attorney responded that the City "cannot move this project forward to the Planning Commission without a[] current critical areas report." Barth's attorney then sent a letter to the City's attorney demanding that the City process the PUD Application under the Prior CAO in effect in October 2014 when the City deemed the application complete, but the City did not do so.

Shadow Creek then filed a complaint in Skagit County Superior Court seeking the issuance of a peremptory writ of mandamus requiring that (1) the Department "conclude its processing of the PUD Application and forward it to the Anacortes Planning Commission," (2) the Planning Commission schedule a hearing on the application, (3) the application be processed "pursuant to the critical area regulations in effect as of October 17, 2014," and (4) the City "withdraw its demand for a supplemental report or any other information or analysis based upon any critical area ordinance or requirement adopted after October 17, 2014." The complaint also sought declaratory relief in similar fashion.

The parties subsequently filed cross-motions for summary judgment. Shadow Creek argued in its motion that the PUD Application vested to the Prior CAO because the application was deemed complete before the New CAO was enacted. In response, the City argued, inter alia, that PUD applications are not

subject to vesting and, therefore, Shadow Creek's PUD Application is not vested to the Prior CAO. Following a hearing, the trial court issued an order concluding that Shadow Creek's PUD Application is not vested to the Prior CAO, granting the City's summary judgment motion, denying Shadow Creek's summary judgment motion, and entering judgment as a matter of law dismissing Shadow Creek's complaint. Shadow Creek appeals.

II

Shadow Creek argues the trial court erroneously concluded in its summary judgment order that the PUD Application is not vested to the Prior CAO. We review summary judgment orders de novo and sit in the same position as the trial court. *Killian v. Seattle Pub. Schs.*, 189 Wn.2d 447, 453, 403 P.3d 58 (2017). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Because the vested rights doctrine does not apply to PUD applications, we reject Shadow Creek's vesting argument and conclude the trial court did not err in granting summary judgment dismissing Shadow Creek's complaint as a matter of law.

Washington's vested rights doctrine generally "allow[s] developers to determine, or 'fix,' the rules that will govern their land development." *W. Main Assocs. v. City of Bellevue*, 106 Wn.2d 47, 51, 720 P.2d 782 (1986). The doctrine originated at common law but is now statutory. *RMG Worldwide LLC v. Pierce County*, 2 Wn. App. 2d 257, 279, 409 P.3d 1126 (2017). The statute relied upon by Shadow Creek in support of its vesting argument, RCW 58.17.033(1), states:

> A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and

zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official.

Accordingly, an application only vests under RCW 58.17.033(1) if it is an application for a "preliminary plat approval of [a] subdivision" or "short plat approval of [a] short subdivision."

Here, the PUD Application is not vested to the Prior CAO under RCW 58.17.033(1) because it is not an application for a preliminary plat approval of a subdivision or a short plat approval of a short subdivision. Our previous decision in *RMG* is controlling on this point. In that case, a golf course developer initially submitted an application for a Planned Development District (PDD), a rezone, and a preliminary subdivision, but it later submitted a separate application for an Unclassified Use Permit (UP) as an alternative and quicker way of developing the property. 2 Wn. App. 2d at 260-63. After the UP application was approved and the golf course was constructed, the developer sold the property to a new owner, who attempted to convert the golf course into a residential subdivision. *Id.* at 264-66. When the county informed the new owner that its proposal did not comply with the current zoning laws enacted after the UP application had been approved, the new owner sought to complete the original developer's PDD application and argued that the PDD application had vested to the previous zoning laws in effect when it was initially submitted. *Id.* at 267. The county rejected the new owner's attempt to complete the PDD application, the hearing examiner agreed with the

county, and the superior court denied the new owner's Land Use Petition Act (LUPA) petition for review of the hearing examiner's ruling. *Id.* at 268.

In affirming the superior court's ruling on appeal, we reiterated that the vested rights doctrine is statutory and, thus, "extends only to complete applications for building permits (RCW 19.27.095(1)); subdivisions (RCW 58.17.033(1); and development agreements (RCW 36.70B.180))." *Id.* at 279-80. Given this statutory directive, we concluded "the vested rights doctrine does not apply" to the new owner's application because "applications for a PDD or rezone are not vested by statute." *Id.* at 280. Especially relevant here, we observed that "[a] PDD, often referred to in other jurisdictions as a *planned unit development* or a planned residential development, is a regulatory technique that excuses a developer from otherwise applicable zoning regulations in exchange for submitting to detailed, tailored regulations." *Id.* at 271 (emphasis added). We have previously defined a planned unit development in nearly identical terms as "a regulatory technique which allows a developer to be excused from otherwise applicable zoning regulations in exchange for submitting to detailed, tailored regulations." *Schneider Homes, Inc. v. City of Kent*, 87 Wn. App. 774, 775-76, 942 P.2d 1096 (1997) (citing in part RICHARD L. SETTLE, WASHINGTON LAND USE AND ENVIRONMENTAL LAW AND PRACTICE § 2.12(c) at 68-69 (1983)).

Shadow Creek's PUD Application is functionally equivalent to the PDD application at issue in *RMG*—which itself was synonymous with a PUD application. Like a PPD application, Shadow Creek's PUD Application seeks to develop the Property by securing exceptions from the City's zoning and subdivision

ordinances, such as those regulating setbacks, building coverage, and number of dwelling units per lot. Because Shadow Creek's PUD Application mirrors the PDD application in *RMG*, we likewise conclude the PUD Application here is not vested by RCW 58.17.033(1) and, therefore, the vested rights doctrine does not apply to it.[1]

Shadow Creek submits that *RMG* is distinguishable because, unlike Shadow Creek's PUD Application, which seeks a preliminary plat,[2] the applicant in *RMG* "did not and could not file a subdivision application . . . but instead sought a 're-zone.'" This argument ignores that the application in *RMG* "requested a PDD, a rezone, *and a preliminary subdivision*." *RMG*, 2 Wn. App. 2d at 261 (emphasis added). Thus, the fact that Shadow Creek's PUD Application sought a preliminary plat in addition to a planned unit development does not bring it within the ambit of RCW 58.17.033(1).

Shadow Creek also urges us to disregard *RMG* because it conflicts with our Supreme Court's prior decision in *Ass'n of Rural Residents v. Kitsap County*, 141 Wn.2d 185, 4 P.3d 115 (2000), which held, "A PUD is a form of property development and, thus, when a preliminary plat application is coupled with a PUD

---

[1] For similar reasons, we conclude Shadow Creek's PUD Application is not subject to vesting under the City's vesting ordinance, AMC 19.20.070. Like RCW 19.27.095(1) (governing vesting of building permit applications) and RCW 58.17.033(1) (governing vesting of subdivision applications), the City's ordinance only applies to "application[s] for a building permit or land division." AMC 19.20.070.A. We decline to interpret the City's vesting ordinance as providing greater vested rights to Shadow Creek than the vested rights established by these state statutes and relevant case law, such as *RMG*. *See Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 873, 872 P.2d 1090 (1994) (noting that municipalities may develop vesting schemes "[w]ithin the parameters of the doctrine established by statutory and case law").

[2] A preliminary plat is "a neat and approximate drawing of a proposed subdivision showing the general layout of streets and alleys, lots, blocks, and other elements of a subdivision consistent with the requirements of this chapter." RCW 58.17.020(4).

proposal, the PUD ordinance is one of the laws in effect at the time of application to which the vested rights doctrine applies." *Id.* at 195 (citing in part *Schneider Homes*, 87 Wn. App. 774). This argument fails to account for the subsequent narrowing of the vested rights doctrine from an expansive common law right to a limited statutory right. After issuing *Kitsap County*, our Supreme Court issued *Abbey Road Group, LLC v. City of Bonney Lake*, which acknowledged that the legislature has codified the vested rights doctrine into statute to "strike a balance between the public's interest in controlling development and the developers' interest in being able to plan their conduct with reasonable certainty." 167 Wn.2d 242, 251, 218 P.3d 180 (2009). Following this statutory directive, the *Abbey Road* court declined to vest a site plan application because the relevant vesting statute, RCW 19.27.095(1), applied only to building permits. *Id.* at 250-54. In doing so, the court rejected the developer's invitation to establish a "uniform vesting point for every land use permit application regardless of the permit's name or what it does or does not do," because "such a rule would eviscerate the balance struck in the vesting statute." *Id.* at 260-61 (internal quotation marks omitted). Later, in *Town of Woodway v. Snohomish County*, 180 Wn.2d 165, 173, 322 P.3d 1219 (2014), the Supreme Court reiterated that "[w]hile it originated at common law, the vested rights doctrine is now statutory."

Following the Supreme Court's emphasis in *Abbey Road* and *Town of Woodway* that the vested rights doctrine is now statutory, the Court of Appeals has strictly interpreted the vested rights doctrine as applying only to those applications or permits listed in the vesting statutes. *See RMG*, 2 Wn. App. 2d at 279-80;

*Alliance Inv. Grp. of Ellensburg, LLC v. City of Ellensburg*, 189 Wn. App. 763, 769, 358 P.3d 1227 (2015) (declining to extend doctrine to a short plat application, noting "[b]ecause the legislature has comprehensively addressed land use issues, courts are not to expand the vesting doctrine"); *Potala Vill. Kirkland, LLC v. City of Kirkland*, 183 Wn. App. 191, 203-24, 334 P.3d 1143 (2014) (declining to extend doctrine to shoreline substantial development permits because "the legislature was aware of the then-existing common law regarding the vested rights doctrine" when it enacted RCW 19.27.095(1) but "only codified the vested rights doctrine to the extent of building permits in this section of the session laws"); *see also Total Outdoor Corp. v. City of Seattle Dep't of Planning and Dev.*, 187 Wn. App. 337, 354 n.53, 348 P.3d 766 (2015) ("The vested rights doctrine applies only to a narrow set of circumstances prescribed by statute for building permit applications, RCW 19.27.095(1), and subdivision applications, RCW 58.17.033(1)."). In light of the aforementioned narrowing of the vested rights doctrine since *Kitsap County*, we adhere to our holding in *RMG* and strictly construe RCW 58.17.033(1) such that it does not apply to PUD applications like the one at issue here.

In sum, because Shadow Creek's PUD Application is not vested to the Prior CAO, the City is entitled to judgment as a matter of law dismissing Shadow Creek's complaint. We therefore affirm the trial court's summary judgment order.[3]

---

[3] Because we resolve this appeal solely on the basis that a PUD application is not subject to vesting, we do not address Shadow Creek's other arguments that the trial court erred in concluding (1) the PUD Application is not vested to the City's Prior CAO because the New CAO is a "mandatory State regulation rather than a discretionary local regulation that could be subject to vesting, pursuant to *Snohomish County v. Pollution Control Hearings Board*, 187 Wn.2d 346, 386 P.3d 1064 (2016)," and (2) vesting is not available to Shadow Creek under AMC 19.20.070 because "those provisions exempt from vesting 'new regulations necessary to protect the public health and safety,'" such as the New CAO. *See Bavand v. OneWest Bank*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016) (we may affirm a trial court's grant of summary judgment on any basis supported in the record); *see*

III

The City requests attorney fees on appeal under subsections (1) and (2) of RCW 4.84.370, which is entitled "Appeal of land use decisions—Fees and costs." Subsection (1) states:

> Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the prevailing party or substantially prevailing party *on appeal before the court of appeals or the supreme court of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval or decision.* The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
>
> (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board; and
>
> (b) The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings.

(Emphasis added). As the italicized text confirms, this subsection applies only in an "appeal . . . of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, site plan, or similar land use approval

---

*also Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd.*, 177 Wn.2d 136, 146-47, 298 P.3d 704 (2013) (appellate courts "retain wide discretion in determining which issues must be addressed in order to properly decide a case on appeal"). Nor do we address the City's arguments that Shadow Creek cannot properly seek mandamus because (1) Shadow Creek failed to timely file a LUPA appeal within 21 days of a land use decision, (2) this action is not ripe because a land use decision has not yet been issued from which Shadow Creek may initiate a LUPA appeal, (3) Shadow Creek seeks to compel the performance of discretionary acts, and (4) Shadow Creek has other plain, speedy, and adequate remedies at law.

or decision." *See* RCW 4.84.370(1). This provision does not apply here because the City has not yet issued, conditioned, or denied the PUD Application.[4]

Nor can the city recover attorney fees under subsection (2) of RCW 4.84.370, which states:

> In addition to the prevailing party under subsection (1) of this section, the county, city, or town whose *decision* is on appeal is considered a prevailing party if its *decision* is upheld at superior court and on appeal.

(Emphasis added). While this provision uses the undefined term "decision," the text of RCW 4.84.370 indicates that this is the same "decision" described in subsection (1). *See Associated Gen. Contractors of Wash. v. State*, 2 Wn.3d 846, 863, 544 P.3d 486 (2024) (noting that "'[e]very provision must be viewed in relation to other provisions and harmonized if at all possible'") (quoting *In re Est. of Kerr*, 134 Wn.2d 328, 335, 949 P.2d 810 (1998)). Thus, as with subsection (1), subsection (2) does not apply here because no such decision has yet been issued with respect to the PUD Application.

The City relies on *Durland v. San Juan County*, 175 Wn. App. 316, 305 P.3d 246 (2013), in support of its fee request. This reliance is misplaced because *Durland* involved an appeal from a superior court's denial of a LUPA petition challenging the county's issuance of a building permit. *Id.* at 318-19. Here, Shadow Creek appeals from a superior court's denial of its complaint seeking a peremptory writ of mandamus and declaratory relief, which is not a LUPA petition.

---

[4] The City appears to confirm as much in its brief when it states, "Barth will be free to argue to submit a prior version of the report along with an updated one, to argue to the [Planning] Commission/Council that a prior version of the CAO applies, and to file a LUPA petition if dissatisfied with the PUD decision."

*See In re Jurisdiction of King County Hr'g Exam'r*, 135 Wn. App. 312, 329, 144 P.3d 345 (2006) (denying request for appellate attorney fees under RCW 4.84.370 because the appeal was "not an appeal of a decision by a county, city, or town, but an appeal of a trial court's denial of a writ of prohibition"); *see also Tugwell v. Kittitas County*, 90 Wn. App. 1, 15, 951 P.2d 272 (1997) (noting that RCW 4.84.370 "was enacted as part of [LUPA]").   Therefore, we deny the City's request for appellate attorney fees.[5]

Affirmed.

Feldman, J.

WE CONCUR:

Bowman, J.                    Dwyer, J.

---

[5] Lastly, we also grant Shadow Creek's motion to strike the statement of additional authority regarding vesting submitted by the City just prior to oral argument. There, the City cites and discusses *Westridge-Issaquah II LP v. City of Issaquah*, 20 Wn. App. 2d 344, 500 P.3d 157 (2021), which was decided several years prior to the close of briefing in this appeal. This is inconsistent with the purpose of RAP 10.8, which is "'to provide parties with an opportunity to bring to the court's attention cases decided after the parties submitted their briefs.'" *Whitehall v. Emp't Sec. Dep't*, 25 Wn. App. 2d 412, 419 n.3, 523 P.3d 835 (2023) (internal quotation marks omitted) (quoting *Ghodsee v. City of Kent*, 21 Wn. App. 2d 762, 782 n.16, 508 P.3d 193 (2022)). But even putting that aside, the case cited by the City is not relevant to our analysis here because, as set forth in the text above, we reject Shadow Creek's vesting arguments for reasons unrelated to those set forth in *Westridge-Issaquah*.